24

United States District Court
Southern District of Texas
FILED

AUG 2 1 2001

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

KOPY KAT SERVICES, INC. AND    §
PATRICK MARK DESANTOS,    §
  §
  §    CIVIL ACTION NO. B-01-019
  Plaintiffs,   §
  §
V.   §
  §
THE TOWN OF SOUTH PADRE   §
ISLAND, TEXAS AND   §
ROBERT RODRIQUEZ,   §
  §
  Defendants.   §

## PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT
## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

COME NOW, Kopy Kat Services, Inc. and Patrick Mark DeSantos, Plaintiffs herein, and file their Motion for Leave to Supplement Response to Defendants' Motion to Dismiss, and would show as follows:

1. Defendants filed their Response to Defendants' Motion to Dismiss on August 16, 2001. Attached to that response was an unsigned affidavit of Plaintiff Patrick Mark DeSantos. Attached hereto is the signed affidavit of Mr. DeSantos. The only change in the signed affidavit and the unsigned affidavit was in paragraph 2.

2. Mr. DeSantos was unavailable to sign the verification as he was on vacation on a house boat without access to a fax machine or notary during the days of August 14 and 15, 2001. As Plaintiffs' counsel was involved in other matters upon receipt of Defendants' Motion, Plaintiffs' counsel prepared, for the most part, the response during the days of August 14 and 15 and could not

get it to him to sign prior to counsel having to send the Response off for filing via overnight courier on August 15, 2001.

     3.     Plaintiffs have shown good cause for leave to supplement their response to Defendants' Motion to Dismiss with the signed Affidavit of Mr. DeSantos.

     WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that this Court grant them leave to supplement Response to Defendants' Motion to Dismiss with the signed affidavit of Mr. DeSantos.

Respectfully submitted,

VIAL, HAMILTON, KOCH & KNOX, L.L.P.
1717 Main Street, Suite 4400
Dallas, Texas 75201
Phone:     (214) 712-4540
FAX:     (214) 712-4402

By:     _____
     SCOTT E. HAYES
     State Bar No. 09280050
     Southern District Federal #25403

ATTORNEY FOR PLAINTIFFS KOPY KAT SERVICES, INC. AND PATRICK MARK DESANTOS

## CERTIFICATE OF CONFERENCE

     I attempted to confer with Mauro Ruiz, counsel for Defendants regarding the relief sought, and he has not returned my telephone call. I will advise the Court as to the position of Mr. Ruiz.

_____
Scott Hayes

**PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT**
**DEFENDANTS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** - Page 2

CiliPDF - www.fasiio.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Plaintiffs' Motion for Leave to Supplement Response to Defendants' Second Motion to Dismiss has been forwarded to Mr. Ricardo J. Navarro, Denton,  Navarro & Bernal, 222 E. Van Buren, Suite 405, Harlingen, Texas 78550, by certified mail, return receipt requested, on August ∂ο , 2001.

Scott Hayes

145460.1

**PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT**
**DEFENDANTS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS - Page 3**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| KOPY KAT SERVICES, INC. AND | § | |
| PATRICK MARK DESANTOS, | § | |
| | § | |
| | § | CIVIL ACTION NO. B-01-019 |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | |
| THE TOWN OF SOUTH PADRE | § | |
| ISLAND, TEXAS AND | § | |
| ROBERT RODRIQUEZ, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF PATRICK MARK DESANTOS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Patrick Mark DeSantos, who being by me duly sworn, deposed and stated as follows:

1.      "My name is Patrick Mark DeSantos.  I am over twenty-one (21) years of age, have never been convicted of a felony or crime involving moral turpitude, and am fully qualified to make this affidavit.  I have personal knowledge of all the facts recited herein, and those facts are true and correct.

2.      I am President of Kopy Kat Services, Inc., and have been so for all relevant times referenced in this Affidavit.

3.      In February 2000, I, along with Mayor Ed Cyganawicz, my attorney at the time, met with an officer Rodriquez of the Police Department of the Town of South Padre Island to discuss the possible opening of a motor scooter rental business by me in the Town of South Padre Island.  Both Mayor Cyganawicz and Officer

Rodriquez endorsed the idea as something that would be of great benefit to the Town of South Padre Island.

4.    I subsequently prepared for the opening of the motor scooter rental business, Kopy Kat Services, Inc., at 2013 Padre Boulevard in South Padre Island, Texas.

5.    In the afternoon of April 15, 2000, I began unloading motor scooters on the property at Gulf Coast Beachwear at 2013 Padre Boulevard in South Padre Island and attaching "Rent Me" signs onto the motor scooters. Within an hour, an individual stating that he was with the South Padre Island Code Enforcement Division arrived and announced to me that it was a violation to attach "Rent Me" signs to the motor scooters, without some sort of permit, and that I must immediately stop attaching such signs. Several hours later, another South Padre Island Code Enforcement officer, Leopoldo Garcia, Jr., arrived at 2013 Padre Boulevard and told me that I could not park the motor scooters on the parking lot in front of Gulf Coast Beachwear, and Mr. Garcia proceeded to write a citation to the owner of such property, apparently on the grounds that there was a violation of Section 20-14 of the ordinances of the town of South Padre Island because there was insufficient parking spaces for the motor scooters to be on the parking lot. Attached hereto as Exhibit "1" is a copy of such citation. On Monday morning, April 17, 2000, Officer Garcia apparently withdrew the citation.

6.    Later in the day of April 17, 2000, a South Padre Island Code Enforcement Division individual went to my private residence at the LaConcha Condos at 2500 Gulf Boulevard in the Town of South Padre Island and demanded answers from the manager of such condos regarding two motor scooters parked near my condo unit.

7.    Between April 15 and 24, 2000, I saw South Padre Island police officers frequently drive by or stop near my business at 2013 Padre Boulevard, monitoring my actions.

8.    On April 24, 2000, the first day that Kopy Kat Services, Inc. began renting the motor scooters, Officer Jose Valdez of the South Padre Island Police Department, at approximately 4:00 p.m., approached five individuals who had rented mopeds from Kopy Kat Services, Inc. thirty minutes earlier. A copy of the drivers' licenses of the individuals renting the moped are attached hereto as Exhibit "2", and their statements of events attached as Exhibit "3". Officer Valdez told the individuals that they could not operate the mopeds because they did not have Texas operator licenses that allowed for the operation of mopeds. Officer Valdez made the individuals leave the mopeds in a parking lot where they were and threatened them against further operation

of the mopeds, and he additionally told them that he was going to ticket me for illegally renting the mopeds to individuals not licensed to operate them. Later that afternoon, Officer Valdez came to Kopy Kat Services, Inc.'s office and advised me that a Texas operator's license was required to operate a moped in Texas. Officer Valdez handed me a copy of the Texas Transportation Code § 521.460, and said that I was in violation of such provision relating to renting of vehicles. I advised Officer Valdez of Texas Transportation Code § 521.030, which allows for the operation of a vehicle if a non-resident may operate that type of vehicle in the non-residents home state. Officer Valdez disagreed, stating that the Michigan individuals could not operate mopeds in Texas. Knowing that a great majority of the moped rental customers were from out of state and knowing that I faced criminal penalties despite the proper and legal operation of my business, Officer Valdez's pronouncement effectively shut down my business.

9.    On April 25, 2000, I attempted to meet with then-Acting Chief Robert Rodriquez regarding the pattern of harassment and illegal action taken by the Police and Code Enforcement officers. While a meeting was scheduled at 4:00 p.m. that day, Chief Rodriquez did not show up and in his place was Officer Charles Morrison of the South Padre Island Police Department (who has subsequently left the force) and another officer. The discussion centered around the actions of Officer Valdez on April 24 as to the five Michigan individuals on the mopeds from Kopy Kat Services, Inc. Officer Morrison initially concurred that he understood that Section 521.030 of the Transportation Code allows individuals to operate mopeds if they can operate them in their home state. He then stated that Michigan law required a motorcycle or moped endorsement, and that the five Michigan individuals did not have such. Officer Morrison then pulled out a copy of a summary of the relevant Michigan statute, which stated: "Moped: Must have a valid operator, chauffeur, or a "moped only" license. Minimum age is 15." A copy of the information provided by Officer Morrison is attached hereto as Exhibit "4".    Officer Morrison then admitted a moped endorsement was not required in Michigan and that his previous statement was wrong, and then he decided that it was a legal issue and abruptly ended the meeting. At that time, I remained in the position by virtue of the previous actions of the Town of South Padre Island officials of facing criminal penalties for legally operating my business.

10.   I then went to the office of Paul Cunningham, Attorney for the Town of South Padre Island for some type of explanation as to the actions by the South Padre Island Police Department and the Code Enforcement Division. Mr. Cunningham was not at his office. My attorney left his name, telephone number and business card and requested that Mr. Cunningham call him regarding the matter. I understand that only weeks later did Mr. Cunningham call, claiming no knowledge of the matter.

11.  In early May 2000, Officer Leopoldo Garcia of the Code Enforcement Division of the Town of South Padre Island returned to 2013 Padre Boulevard and advised me that the zoning for the Town of South Padre Island prohibited the operation of a motor scooter rental business at 2013 Padre Boulevard, South Padre Island, Texas, and that the Town of South Padre Island would act to prevent the motor scooter rental business from operating  at such location. Based on the harassment, intimidation, and illegal enforcement of the laws against me by the officials of the Town of South Padre Island, I feared for my safety and liberty and consequently no longer have my condominium and do not stay on the Island.

12.  I have attached as Exhibit 5 hereto copies of portions of Chapter 20 of the Town of South Padre Island's Code of Ordinances which I have been told by Mr. Garcia regulates the land use in the Town of South Padre Island and that 2013 Padre Boulevard lies in District "C-2", as well as a map showing the zoning locations in the relevant portion of Town.

13.  The actions involving the mopeds is not the first attempt by the South Padre Island Police Department and Code Enforcement Division to shut down a business that I operate. I also own and operate a business, Digital Imaging Associates, Inc., in the Town of South Padre Island. The business involves manufacturing novelty products, including identification cards. The South Padre Island Code Enforcement Division and the Police Department used the same *modus operandi* to attempt to shut down that business. In 1998, South Padre Island Code Enforcement individuals came to the Digital Imaging Associates, Inc. business and made verbal complaints regarding the business. I also received a form of a "cease and desist" letter from the South Padre Island Police Department threatening to shut down the operation of the business. These actions continued in 1999. On March 25, 1999, an employee of Digital Imaging Associates, Inc., Jason Alexander, received a ticket from a South Padre Island Code Enforcement Department individual, Thomas Deckard, regarding a  sign at the business. Like the citation relating to the parking spaces, the citation was soon thereafter withdrawn.

14.  On April 1 1999, I was arrested by officers from the Town of South Padre Island Police Department and charged with the offense of delivery or manufacture of counterfeit instrument under Transportation Code § 521.456(b), a third degree felony. My business was also raided with virtually everything confiscated by the South Padre Island Police Department. Mr. Alexander was also arrested. The charges were later

summarily dropped, but only after my business was shut down and Mr. Alexander and I had been arrested.

**FURTHER, AFFIANT SAYETH NAUGHT."**

_____
Patrick Mark DeSantos

SUBSCRIBED AND SWORN TO BEFORE ME this ___ day of August, 2001, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS
My Commission Expires: 3-21-2002

127472 1



SHELLY L. MOSS
NOTARY PUBLIC
STATE OF TEXAS
MY COMMISSION EXPIRES
March 21, 2002

TOWN OF SOUTH PADRE ISLAND
MUNICIPAL COURT
COUNTY OF CAMERON
STATE OF TEXAS

NOTICE TO APPEAR – NON-TRAFFIC                    **1065**

Court Case No. _____            Citation number _____

In the name of  TOWN OF SOUTH PADRE ISLAND, TEXAS· The
understanding certifies that he has good reason to believe
and does believe that he did, on about _____
____ day of ____ April ____ at ____ AM ____ you
_Gressinger_ _Larry_ ____ M ____ Alias ____
Last Name                First              M.I.        Alias
_104 Parade Ct. 4_
Addr.                    City/State
(956) 781-6721              TX-14308390
Phone                    Rcd / Sex         D. Lic.
_Diner_
Occupation              Place of Employment    Phone (Res / Work)

at location _2015 Padre Blvd_
in the TOWN OF SOUTH PADRE ISLAND, Cameron County, Texas

_____
in violation of Sec. _____ _____
                                                    No. of persons

_Leo Garcia_                          _3301_
Officer                                Badge #

I hereby promise to appear in court at 4601 Padre Boulevard
on ____15____ day of ____April____ at 9:00 A.M.
_Larry G____
Signature of Defendant

CASE REPORT NO _____ Report Made· ( ) YES
                                                    ( ) NO
VICTIM:

_____
Last Name              First          M.I.        D.O.B.
SS / PD #              City            State
Place of Employment    Address        Phone

WITNESSES  ( Name, Address, Phone )
1.
2.
3.
CO-DEFENDANTS: ( Name, Address, Phone )
1.
2.
DEFENDANT'S BEHAVIOR: _____ Good _____ Bad
EXPLAIN:

NARRATIVE:

                                    Complainant / Officer    IO #

EXHIBIT

1

# MICHIGAN

OPERATOR LICENSE
V 67   186 166

CRYSTAL VANDENHEYDEN
0012 HEATHER CT
STERLING HEIGHTS, MI 0010-0044

*Crystal vandenheyden*

# MICHIGAN

OPERATOR LICENSE
K 644 763 641 334

TIMOTHY JOSEPH KRULL
3701 MAALE DR
STERLING HEIGHTS, MI 0013-1063



# MICHIGAN

OPERATOR LICENSE
E 625 643 146 767

ALAN EDWARD EARZINSKI
3908 LONGACRE DR
STERLING HEIGHTS, MI 0313-3364



*Alan Earzynski*

# MICHIGAN

OPERATOR LICENSE
C 623 174 356 664

RICHARD GREGORY CHRASTEWSKI
37117 ALPER DR
STERLING HEIGHTS, MI 0313-034

*Richard chrastek*

# MICHIGAN

OPERATOR LICENSE
L 656 379 614 704

GINA LAZARA
3027 ROWE CT
STERLING HEIGHTS, MI 0313-3225



*Gina Lazara*





EXHIBIT
2

CIBPDF - www.fwsio.com

On Monday April 24, @ approximatly 8:30 pm, 5 students from Sterling Heights MI, Gina Lalama, Crystal Vanderheyden, Rich Chrostowski, Tim Krull, Alan Sarzynski proceeded to rent 5 mopeds from CopyCap scooters. When renting the vehicles we were informed that it was ligal in the state of texas to operate the vehicles with a ligalized United States liscence. After handing over a $100 deposit and $40 rental fee for the mopeds, we were then given instructions on how to properly operate the vehicles. We proceeded to ride the bikes for no. more than 30 minutes when we pulled into the Blue Marlin supermarket. We were then approached by Officer J. Valdez from the South Padre Police department who asked to see all of our liscences. He asked if any of us had a "class A moped operators liscence" to which we all respond. He then went back to his police car to verify the law. We were then told that it is against texas law to operate a moped without a "class A moped operators liscence". He said that because we were told wrong of this law that he would not issue us a citation but that he would issue one to

rule to ... was mark's ... to retrieve ... vehicles. We then took a taxi back to 'opyCat Scooters where we waited aprx. 30 min for mark. When he arrived we explained the charges brought against us as well as him. He then refunded each of us ... our $100 deposits as well as our $40 rental fee. The above statement ... is legitimate and accurate and is agreed upon by each of the five students who have signed below.

Gina Lalama
Gina Lalama
(810) 977-0303

Rich Chrostowski
Rich Chrostowski
1(810) 268-2509

Tim Krull
Tim Krull
:10)-934-7932

Crystal VanderHeyden
Crystal VanderHeyden
(810) 939-7212

Ian S. Sarzynski
Ian Sarzynski
()977-8776

STATE OF TEXAS
COUNTY OF CAMERON

This instrument was acknowledged before me on April _____, 2000 by Gina Lalama, Rich _____ Crystal VanderHeyden, Tim Krull and Alan Sarzynski.



_____
Notary Public, State of Texas

GLADYS HOPKINS
MY COMMISSION EXPIRES
April 2, 2002

**MICHIGAN DRIVER'S LICENSE**
■ Currently Issued License (Fig. 23.1)

1. **Description**

   SIZE: Width: 3 3/8"  Height: 2 1/8"

   FRONT DETAIL: Digitized credit-card style license with a photographic headbar showing the Mackinac Bridge and "MICHIGAN" in blue print at left. Driver license header information (including the license number) is color coded as follows: Operator and Chauffeur Driver License are blue; Commercial Driver License is green; Graduated Driver License is red; Moped License is orange. Driver's photo, with blue backdrop, is at left; black printing below indicates that medical and anatomical gift information is shown on back. Under 21 statement, printed in red ink above photo, identifies month, day and year of 21st birthday of a minor driver. Expiration date is printed in red ink. PolaSecure® optical variable device imprinted on the laminate shows outline of the state and the word "MICHIGAN" repeating on the face of the license. Image of the Great Seal of Michigan is printed across the center of the license, in primary-colored ultraviolet ink that will fluoresce in multiple colors and is viewable under a black light. Driver's name and address, to right of portrait, appear on three lines followed by two rows of data and driver's digitized signature. The date of birth is shown in red print. At lower right a serial number appears. It shows the year, Julian date, and Secretary of State branch number (issuing office). A "D" at the end indicates a duplicate license has been issued.

   BACK DETAIL: Back contains magnetic stripe and bar code preceded by statement "Information contained in bar code and magnetic stripe is limited to date of birth, license/ID number and expiration date." Anatomical gift statement (with "Medic Alert" square at right) contains lines for signature of donor; witness; emergency contact; and telephone number. Instructions read "USE BALL POINT PEN ONLY." There is space at bottom for change of address label.

   MATERIAL: Teslin stock with optical variable device imprinted in laminate. Manufactured by Polaroid Corporation.

2. **Classes and Endorsements**

   The Michigan CDL is classified in conformity with federal law and is restricted to the type of vehicle for which the license holder qualifies. The CDL classes are shown below:

   CLASS A: Any vehicle towing another vehicle with a GVWR of 10,000 lbs.

   CLASS B: Vehicle with a GVWR of 26,001 lbs. or more, combination vehicles with a GCWR of 26,001 lbs. or

AUG. 1998



Case 1:01-cv-00019   Document 24   Filed in TXSD on 08/21/2001   Page 14 of 63

towing a vehicle not more than 10,000 lbs. GVWR.

**CLASS C:** Small vehicle designed to carry 16 or more people including the driver, and small vehicles carrying hazardous materials in amounts requiring placarding.

**ENDORSEMENT T:** Double/triple trailers with class A designation (triple trailers are NOT permitted in Michigan).

**ENDORSEMENT N:** Tank vehicles with class A or B designation.

**ENDORSEMENT H:** Hazardous materials.

**ENDORSEMENT P:** Passenger vehicles with class A, B or C designation, designed to carry 16 or more persons (including the driver).

**ENDORSEMENT X:** Combination of N and H.

Non-commercial classes are as follows:

**OPERATOR'S LICENSE:** Valid for any non-commercial vehicle, including vehicles used only in farm work. Operator may need an endorsement required for certain types of vehicles. Minimum age is 18; 16 with completion of driver training. This license is indicated by "O" in license type field.

**CHAUFFEUR'S LICENSE:** Valid for all vehicles when driving for hire. Certain types of vehicles require an endorsement. Minimum age is 18; 16 with completion of driver education. License is indicated by "C" in license type field.

**GRADUATED DRIVER LICENSE:** Levels 1, 2, 3. See under Minor and Provisional Licenses.

**MOPED:** Must have a valid operator, chauffeur or a "moped only" license. Minimum age is 15.

**MOTORCYCLE ENDORSEMENT:** Required for the operation of a motorcycle. Driver must have a valid operator's or chauffeur's license, endorsed "OCY" or "CCY" in the type field on the license front. Minimum age is 18; 16 with completion of driver education and a motorcycle safety course.

3. **License Data Significance**

**LICENSE NUMBER:** Soundex system, 1 letter and 12 digits as follows:

P   = first letter of last name
865 = code of last name
760 = code of first name
021 = code of middle name
781 = code of month and day of birth

**DESCRIPTION FIELDS:** License number, expires, name and address, date of birth, sex, height, eyes, type, endorsement, restrictions.

**OTHER INFORMATION:** Instructions regarding medical information and anatomical gift, driver's signature, unit number that incorporates Secretary of State (issuing) branch office number at bottom right.



# Town of South Padre Island Zoning Codes

# Chapter 20 of the Town's Code of Ordinances

*Amendments as of February 3, 2000*

EXHIBIT

"__5__"

CMSPDF - www.texiss.com

# Chapter 20

## ZONING*

**Sec.20.1    Short title.**

These regulations shall be known and may be cited and referred to as the "Town of South Padre Island Zoning Ordinance." *Editor's Note - Ordinance No. 77, the Zoning Ordinance, adopted and effective on November 9, 1979, is herein set forth as codified, supplemented and modified

**Sec.20-2    Same—Zoning, adoption of statute.**

The provisions of Chapter 283, of the acts of the regular session of the 40th Legislature of the State of Texas (Now codified as Chapter 211 of the Local Government Code), relating to zoning in cities and towns in the State, are hereby adopted as the law governing the zoning of the territory lying within the incorporated limits of the Town.

**Sec.20-3    Definitions.**

For the purpose of this Ordinance, the following words and terms as used herein are defined to mean the following:

Words used in the present tense include the future; words in the singular number include the plural number; the words in the plural number include the singular number; the word "building" includes the word "structure"; the word "lot" includes the word "plot"; the word "shall" is mandatory and not discretionary.

Accessory building or use: A subordinate building having a use customarily incident to and located on the lot occupied by the main building; or a use customarily incident to the main use of the property. A building housing an accessory use is considered an integral part of the main building when it has any part of a wall in common with the main building, or is under an extension of the main roof and designed as an integral part of the main building.

Alley: A minor way which is used primarily for vehicular service access to the back or side of properties otherwise abutting on a street.

Alteration: Any addition, removal, extension, or change in the location of any exterior wall of a main building or accessory building.

Amusement center: An amusement center is a business wherein there are located machines which require the deposit of money therein to be activated for an individual's entertainment, and from which said business establishment derives fifty percent (50%) or more of its gross income.

Apartment: A room or a suite of rooms within an apartment house arranged, intended or designed for a place of residence of a single family or group of individuals living together as a single housekeeping unit.

Apartment house: A building or portion thereof arranged, intended or designed for three (3) or more families or housekeeping units living independently of each other.

Boarding house: A building other than a hotel, occupied as a single housekeeping unit, where lodging or meals are provided for five (5) or more persons for compensation, pursuant to previous arrangements, but not for the public or transients.

Building: An enclosed structure, anchored to permanent foundation, and having exterior or party walls and a roof, designed for the shelter of persons, animals or property. When divided by other than common contiguous walls, each portion or section of such building shall be regarded as a separate building, except that two (2) buildings connected by a breezeway shall be deemed as one building.

Coin operated laundries: A business establishment wherein there are washing and drying machines being used by the general public by the deposit of money therein and wherein they can cause wearing apparel and other personal items to be laundered. (Ord. No. 2D, 6-16-76)

Condominium: The separate ownership of single units or apartments in a multiple unit structure or structures with common elements. (as defined by the Texas Property Code)

Convenience storage facilities: A masonry structure which is partitioned into small sections for the purpose of renting individual storage rooms to individuals or corporations for the purpose of storing belongings but from which there will be no general storage business or warehousing business operated or any other type of business operation.

Customary home occupations: Occupations ordinarily carried on in a home that are not detrimental or injurious to adjoining property. These may include serving meals or renting rooms to not more than five (5) persons and not members of the household, dressmaking, millinery, washing and ironing. Customary home occupations shall not include barber shop, flower shops, carpenter shops, electrician, plumbers' shops, radio shops, tinners shops, transfer or moving van offices, auto repairing or sign painting.

Depth of Lot: The mean horizontal distance between the front and the rear lot lines.

Depth of Rear Yard: The mean horizontal distance between the rear line of a building other than an accessory building and the center line of the alley where an alley exists, otherwise the rear lot line.

District: A section of the Town for which the regulations governing the area, height and use of buildings are uniform.

Dwelling: A building or portion thereof, designed exclusively for residential occupancy, including one-family, two-family and multiple family structures, boarding and lodging houses, apartment houses, but not hotels, house trailers or mobile homes.

Dwelling, Multiple Family: A building intended or designed as a residence for three (3) or more families or housekeeping units living independently of each other.

Dwelling, One-Family: A detached building arranged, intended or designed for occupancy by one (1) family.

Dwelling, Two-Family: A building arranged, intended or designed for occupancy by two (2) families.

Family: Any number of individuals living together as a single housekeeping unit; as distinguished from a group occupying a boarding house or hotel.

Front Yard: A yard across the full width of the lot from the front line of the main building to the front line of the lot.

Garage: An accessory building principally for storage of motor vehicles.

Garbage, Garbage Container Locations, Garbage Container Requirements: All development over the occupancy of a four-plex and all commercial development must dedicate a space within its development plans to locate and maintain a garbage container. The space designated for the location of the garbage container cannot be located in the public right-of-way, cannot be located in the front-yard setback, and cannot diminish and/or occupy areas designated for parking. It is further required that all garbage containers and the area designated for its location must be enclosed and/or screened from the public's view.

Gross Floor Area: The gross floor area of a building shall be measured by taking outside dimensions of the building at each floor, excluding the floor area of basements or attics when not occupied as living quarters.

**Height:** The height of a building or portion of a building shall be measured from the average established grade at the street lot line or from the average natural ground level, if higher, to the highest point of the roof's surface if a flat surface; to the deck line of mansard roofs; and to the mean height level between eaves and ridge for hip or gable roofs. In measuring the height of a building, the following structures shall be excluded: chimneys, cooling towers, radio towers, ornamental cupolas, domes or spires, elevator bulkheads, penthouses, tanks, water towers and parapet walls not exceeding four (4) feet in height.

**Hotels and Motels:** A building occupied or used as a more or less temporary abiding place of individuals or groups of individuals who are lodged, with or without meals, and in which there are more than twelve (12) sleeping rooms, and no provisions for cooking in individual rooms.

**Institution:** A building occupied by a non-profit corporation or non-profit establishment for public use.

**Lodging House:** A building other than a hotel where lodging for five (5) or more persons is provided for compensation.

**Lot:** Land occupied or to be occupied by a building and its accessory buildings, and including such open spaces as are required under this Ordinance, and having its principal frontage upon a public street or officially approved place.

**Lot Front line:** The line of an interior lot which is adjacent to the street. On corner lots, it is the prolongation of the front lot line of adjacent interior lots as originally platted.

**Lot Lines:** The lines bounding a lot as defined herein.

**Lot Rear Line:** The boundary line which is opposite and most distant from the front lot line.

**Lot Corner:** A lot abutting upon two (2) or more streets at their intersection. A corner lot shall be deemed to front on that street on which it has its least dimension, unless otherwise specified by the building inspector.

**Nightclub:** Any business holding a mixed beverage permit from the Texas Alcoholic Beverage Commission or the appropriate State agency.

**Non-Conforming Uses:** A building or premises occupied by a use that does not conform to the regulations of the use in the district in which it is situated.

**Open Spaces:** Area included in any side, rear or front yard of a lot other than the building space which is measured as the outside dimensions of the floor area of the building. Therefore, in determining the percent of coverage of buildings allowed on a lot, the projections of the buildings, such as eaves, cornices, porches, stairways, carports, etc., are considered as open spaces and not building space.

**Parking, Parking Requirements, Off-Street Parking.** All parking requirements of a building or premises must be provided on the same site/land for which the building permit is issued, and the same may not be located on any property that is not contiguous and joined to the building site, unless a permit for an off-premise parking lot has been approved in accordance with the requirements of Section 20-7(D)(5)(n) or Section 20-8(F)(5)(h). All parking areas, and access thereto, must be located upon property of the same or more intensive zoning district, and must be of a concrete or asphalt surface. All parking lot construction shall conform to Article 2, Section 2.18, Parking Lots, of the Standards and Specifications for the Acceptance of Public Improvements for the Town of South Padre Island, Texas.

**Persons:** The word "person" shall, for the purpose of this ordinance, mean every person, firm, co-partnership, association, partnership, corporation or society; and the term "person" shall include both singular and plural and the masculine shall embrace the feminine gender.

**Public Service Facility :** A building, structure, or group thereof, which is intended to be used as, or perform as, a public utility, is considered to be and is defined as a PUBLIC SERVICE FACILITY. Electrical

power plants, electrical power distribution substations, water and sewer treatment plants or pumping stations, sewage lift stations, and other similar public service structures are examples of PUBLIC SERVICE FACILITIES. A PUBLIC SERVICE FACILITY may be publicly or privately owned, and may be regulated by the state, municipality, or other governmental agency; the primary purpose of such a facility is to provide to the public electrical, gas, transport, communications, water, sewage, and other such services. The erection, construction, alteration, operation or maintenance of a PUBLIC SERVICE FACILITY is regulated by this Ordinance; however, all underground facilities and mains or minor above ground facilities such as electrical transformers, sewer cleanouts, cable T.V. connection boxes, water meters, and the like are exempt from this definition.

Recreational Center: A building which is totally enclosed, both with ceilings and walls, within which there is located facilities for the conduct of sports and other related recreational activities and there may be located outdoor swimming pools directly adjacent to said enclosed facilities and which are an integral part of the main facility. Any recreational center may also have located within the sport facilities a pro shop wherein items are sold in connection with sports and recreational activities, a nursery to care for the children of the participants, and a beauty shop for the participants located therein. (Ord. No. 2H, 10-20-76)

Rear Yard: A yard between the rear lot line and the rear line of the main building and the side lot lines.

Side Yard: A yard between the main building and the adjacent side line of the lot, and extending entirely from the front yard to the rear yard.

Standard Story in Height: Any story that does not exceed ten (10) feet in height from the floor or ground to the ceiling immediately above. Any structure exceeding thirty (30) feet from ground level to top ceiling wall will be in excess of three (3) stories in height.

Street: Any public thoroughfare dedicated to the public and not designated as an alley.

Story: That portion of a building between the surface of any floor and the surface of the floor next above it, or if there be no floor above it, then the space between such floor and the ceiling next above.

Structural Alterations: Any change in the supporting member of a building such as bearing walls, columns, beams or girders.

Tandem Parking: For single-family dwellings, two-family dwellings, townhouses, and those multi-family developments of twelve (12) units or less which provide fully enclosed individual garages or carports or open uncovered parking for each dwelling unit, tandem parking spaces may be used as a design option in meeting the parking requirements of this Ordinance. The use of tandem parking shall meet the following requirements:

(a) A tandem parking space shall be a minimum of nine (9) feet in width and thirty-six (36) feet in length, and shall count as the equivalent of two, regular parking spaces, with a minimum of nine (9) feet wide by eighteen (18) feet long per parking space.

(b) Tandem parking spaces shall only be permitted for those multi-family projects of twelve (12) units or less in which individual fully enclosed garages or individual carports or individual open uncovered parking spaces are provided for each individual dwelling unit, and where each nine foot (9') by thirty-six foot (36') or larger tandem parking space whether covered or uncovered shall be dedicated to a specific dwelling unit by means of a restrictive covenant or condominium declaration, firmly binding the assignment of the clearly marked parking spaces to a specific dwelling unit in the project. A copy of the recorded document reflecting the book and page of the Cameron County Clerk's records where the document will be found shall be placed on file in the offices of the South Padre Island Planning and Building Department prior to the initiation of such tandem parking.

(c) All tandem parking spaces shall be entirely located upon private property. No portion of any tandem parking space shall utilize the public right-of-way or other public property.

(d) Tandem parking spaces shall be paved in either a concrete, asphalt, or paver block surface.

Townhouse: A Townhouse is a single-family dwelling unit constructed in a series or group of attached units with property lines separating such units. (Ord. No. 778, 7-1-81)

Travel Trailer park: An area designed and used for the temporary occupation by automobile trailers and providing for one (1) or more of such quarters.

Width of Side Yard: The horizontal distance between the side wall of a building which includes eaves, cornices, porches, stairways, carports or any projection of the building and the side line of the lot.

Yard: An open space of ground between a building and the adjoining lot lines, unoccupied and unobstructed by any portion of a structure from the ground upward, except as otherwise provided. In measuring a yard for the purpose of determining the width of a side yard, the depth of a front yard or the depth of a rear yard, the least horizontal distance between the lot line and the main building shall be used.

## Sec.20-4    Districts.

For the purpose of regulating and restricting the use of land and the erection, construction, reconstruction, alteration, moving or use of buildings, structures or land, all lands within the corporate limits of the Town are hereby divided into districts with their respective classification as follows:

| | |
|---|---|
| "A" | Single family dwelling district. |
| "E" | Low Density Residential--Single-Family and Townhouse Dwelling District. |
| "B" | Multiple family dwellings, apartments, motel, hotel, condominium, townhouse district. |
| "C" | Business district - Fire zone. |
| "C-1" | General Business District - Fire Zone |
| "C-2" | Entertainment Related Uses District |
| "C-3" | Limited Business District - Fire Zone |
| "D" | Resort area district. |
| "D-1" | Resort Area District |
| "D-2" | Transitional Resort Area District |

No land shall be used for and no building shall be erected for or converted to, any use other than provided in the regulations prescribed for the District in which it is located, except as hereinafter provided.

## Sec.20-5    District map.

(A)   Boundaries of the districts, as enumerated in Section 20-4, are hereby established as shown on a map prepared for that purpose, which map is hereby designated as the "Zoning District Map"; and said map and all the notations, references and information shown thereon is hereby made as much a part of this ordinance as if the same were set forth in full herein. The Town shall keep on file in its offices an authentic copy of said map, and all changes, amendments or additions thereto.

(B)   When definite distances in feet are not shown on the Zoning District Map, the district boundaries are intended to be along existing street, alley or platted lot lines, or extensions of the same, and if the exact location of such lines is not clear, it shall be determined by the Board of Aldermen, due consideration being given to location as indicated by the scale of the Zoning District Map.

(C)   When streets or alleys on the ground differ from the streets or alleys as shown on the Zoning District Map, the Board may apply the district designations on the map to the streets or alleys on the ground in such a manner as to conform to the intent and purpose of this ordinance.

(D)   Whenever any street or alley is vacated, the particular district in which the adjacent property lies shall be automatically extended to the center line of any such street or alley. Whenever a street or alley is dedicated, the zoning district within the area dedicated shall be void.

**Sec.20-6**     District "A"- .Single family dwelling district.

(A)   Use regulations:

(1)   · Dwellings, one family.

(2)   Accessory buildings, including a private garage and bona fide servants' quarters, not for rent. When the accessory building is directly attached to the main building it shall be considered an integral part of the building. When the accessory building is attached to the main building by a breezeway, the breezeway may be considered a part of the accessory building. The floor area of all accessory buildings on the lot shall not exceed 50% of the floor area of the principal structure.

(3)   Temporary buildings to be used for construction purposes only and which shall be removed upon completion or abandonment of construction work.

(4)   Field offices for the sale of real estate for the specified development which shall be used for temporary offices only, to be removed after sales are closed, and to be used on the site only. A building permit is required for the installation of a field office and shall be valid for a one (1) year period, renewable upon expiration if sales are still active.

(5)   Special Exceptions:  Public Service Facility. (Ord 96-05. 10-2-96)

(B)   Height regulations:No building shall exceed forty-five (45) feet, when measured vertically from the center line of the street to the highest point of the building.(Ord 99-03.  3-3-99)

(C)   Area regulations:

(1)   Front yards:

(a)   There shall be a front yard having a minimum depth of twenty-five (25) feet.

(b)   Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

(2)   Side yards:  There shall be a side yard on each side of the lot having a clear width of not less than five (5) feet, including projections of the side of the building such as eaves, cornices, porches, stairways, carports, etc.  In all cases where the side yard is adjacent to a side street, the side yard shall not be less than ten (10) feet.

(3)   Rear yards:

(a)   There shall be a rear yard having a depth of not less than twenty (20) feet from the rear lot line.

(b)   Where canals, bayfront, beach front, and yacht basins occur at rear of lots, buildings may extend to the bulkhead.

(c)   Where canals and yacht basins occur at rear of lots, boathouses may extend twenty feet (20') into the water provided that the structure is less than twelve feet (12') in height, is open construction, has no bathroom facilities and observes the sideyard set back as if the property lines were extended.  (

(4) Area of lot: The minimum area of a lot shall be 5,000 square feet or as recorded in the county courthouse as of November 7, 1979.

(5) Width of lot: The minimum width of a lot shall be fifty (50) feet.

(6) Depth of lot: The minimum depth of a lot shall be one hundred (100) feet.

(7) Area of building: The minimum area of a dwelling structure shall be 2,000 square feet in any lot in Block 192 and a minimum of 1,200 square feet in all other lots in the single family district. In the case of two or more stories, the area requirements shall apply to the ground floor.

(8) Parking regulations: Off-street parking space shall be provided on the lot to accommodate two (2) motor cars for each dwelling unit; however, no supporting member of any garage, carport or any garage structure shall be located within the required front yard.

(9) Sanitation: There shall be no sewage disposal without water carriage. Chemical toilets may be erected on a temporary basis during construction only.

(10) Type of construction-Padre Beach Section XII: All buildings erected on any portion of Padre Beach Section XII must be of masonry or reinforced concrete construction from the ground floor to the second floor living area. This, however, will not preclude the use of wood material for roof members, windows, doors and for decorative effects. For the purpose of this sub-section only, masonry may include the use of brick veneer.

**Sec. 20-7**   District "B" - Multi-family dwelling, apartment, motel, hotel, condominium, townhouse district.

(A) Area, width, and depth of lots, sanitation and temporary building provisions are the same as District "A".

(B) Use Regulations: In District "B", no land shall be used and no buildings shall be erected for or converted to any use other than:

(1) Single family dwellings, multi-family dwellings; apartment buildings, boarding and lodging houses, hospitals, clinics, convalescent homes, children's nurseries, hotels, motels, condominiums and townhouses. Only condominiums, hotels and motels with more than twelve (12) units may have included within the premises such businesses as cafes, barber shops, beauty parlors and other similar businesses if such business is for the convenience of the occupants of the building and is definitely an integral part of the services of such hotel, condominium or motel.

(2) Private clubs, fraternities, sororities and lodges, that operate solely for the benefit of their members; a church; public school; a private or parochial school having a curriculum equivalent to a public elementary or high school.

(3) Townhouse. Prior to any permit being granted for the building of a townhouse, the proposed builder/owner shall be required to file a map of plat in recordable form with the Building Inspector and the same will be transmitted by the Building Inspector with his recommendations to the Board of Aldermen for approval or disapproval. In no case may the proposed lot size for the townhouse district be less than 2500 square feet per dwelling unit.   (Ord. No. 77B, 7-1-81)

(4) Incidental uses to any of the above specified uses include, but are not limited to, customary home occupations when engaged in by the private dwelling occupant

Examples are : a dressmaker, the office of a physician, surgeon or dentist, a musician or artist studio. Said incidental use, however, shall never be permitted as a principal use, but only as a secondary use when indispensably necessary to the enjoyment of the premises by the private dwelling occupant.

(5)     Special Exceptions:  Public Service Facility. (Ord 96-05. 10-2-96; Amnd by 98-04)

(C)   Height regulations:  There shall be no maximum height of buildings, but yard requirements for buildings higher than six (6) standard stories shall meet the requirements as outlined in Section 20-7(D) and in no case shall the height of the building exceed the total of the street right-of-way width on which it faces plus the depth of the front yard.

(D)   Area regulations:

(1)     Front yards:  Same as District "A" (minimum of 25') except all lots facing the Gulf of Mexico on the east side of Gulf Boulevard from Section I through Section XII, Padre Beach Subdivision, and all lots in Sunny Isle and Haas Subdivision, may have a front yard depth of not less than ten (10) feet from lot line.   The minimum front yard shall be increased one (1) foot for each two (2) feet in height if a building exceeds six (6) standard stories.

(2)     Side Yards:  Same as District "A" (minimum of 5'), except the side yard shall be increased four (4) feet for each story the building exceeds three (3) standard stories in height including eaves, cornices, porches, stairways, carports, etc.

(3)     Rear yards:

(a)     Same as District "A" (minimum of 20'), except that the structure may have decks and/or balconies extending within 10 feet of the rear property line, as long as said decks or balconies are not enclosed and shall only have such enclosures thereabouts as may be required as a good building practice.  Any open deck or patio that undertakes to extend beyond the 20 feet rear yard setback within 10 feet of the rear property line as provided for above, shall only be erected or placed in such a manner after a permit specifically therefor is issued by the Building Inspector.  The open deck allowed within said area may not in any manner be enclosed, and by way of illustration and not by limitation, such as awnings, shutters, walls or having fixtures or any other type of device other than that which is required as a safety measure under the Building Codes.  Any subsequent enclosure on a lawfully extended deck hereunder shall be deemed a violation of this Ordinance. (Ord. No. 77E, 10-6-83)

(b)     Minimum rear yard depth shall be increased one (1) foot for each two (2) feet in height if the building exceeds six (6) standard stories.

(4)     Size of structure:  The minimum size of structure is six hundred (600) square feet, except within Padre Beach Section XII, which shall be twelve hundred (1,200) square feet except Blocks 178, 191, and 192 which shall be 2,000 square feet.

(5)     Parking regulations:

(a)     Whenever a structure is erected or converted for single family or multiple family dwelling units, one and one-half (1 1/2) off-street parking spaces shall be provided on the lot for each dwelling unit in the structure. For single-family or multiple-family structures erected after August 1, 1994, two (2) off-street parking spaces shall be provided on the lot for each dwelling unit in the structure.

(b)     Private clubs and lodges shall provide off-street parking space in a ratio of one (1) space for each one hundred and fifty (150) square feet of gross floor area in the lodge or club.

(c)     Places of assembly shall provide off-street parking space on the lot sufficient to accommodate one (1) automobile for each five (5) seats.

(d)     Churches shall provide one (1) off-street parking space for each five (5) seats.

(e)     Schools shall provide one off-street parking space for each fifteen (15) students plus one (1) each for each teacher.

(f)     Hospitals shall provide off-street parking space on the lot sufficient to accommodate one (1) automobile for each five (5) beds, but in no case shall less than five (5) off-street parking spaces be provided.

(g)     Clinics shall provide off-street parking at a ratio of one (1) space for each two hundred and fifty (250) square feet of gross floor area within the structures but in no case shall less than five (5) off-street parking spaces be provided.

(h)     Hotels and motels shall provide one (1) off-street parking space for each guest bedroom in the building. For hotels and motels erected after August 1, 1994, the number of parking spaces required shall be one (1) off-street parking space for each guest bedroom in the building plus Fifty Percent (50%) of the off-street parking requirements from the various accessory uses operated upon the property, such as restaurant and retail space, computed in accordance with the requirements of Chapter 20 of the Code of Ordinances (Zoning), as if they were principal uses.

(i)     Rooming and lodging houses shall provide off-street parking space at the ratio of one (1) space for each two (2) guests for which accommodations are provided.

(j)     Condominiums and apartments shall provide one and one-half (1 1/2) off-street parking spaces for each unit in the building. For condominiums and apartments erected after August 1, 1994, two (2) off-street parking spaces shall be provided for each unit in the building.

(k)     Townhouses.  Each dwelling unit shall provide two (2) off-street parking spaces. (Ord. No. 77B, 7-1-81)

(l)     No parking garage or structure shall be erected in a required front or side yard.
(Ord. No. 77A, 7-1-81)

(m)     The requirement for the provision of eight (8) stacking spaces for any use that will provide a drive through sales facet to its operation to insure that traffic will not back-up onto the public right-of-way.

(n)  Required parking for a non-residential use may be located off-site under the following circumstances:

(1)     No more than Fifty (50) Percent of the required parking for the use may be located off-site.

(2)     The off-site parking location must be either a contiguous property on the same side of the street as the property upon which the principal use to be served

by the off-site parking is located, or a property directly across the street from the principal use, but no farther than Seventy-Six Feet (76') from the nearest property line of the principal use. Notwithstanding this provision, off-site parking locations shall not be permitted on the opposite side of Padre Boulevard from the location of the principal use to be served by the off-site parking.

(3)     All off-site parking lots shall be located on property zoned within the same or similar zoning district.

(4)     A written agreement, prepared by the applicant and drawn to the satisfaction of the Town Attorney, shall be executed by all parties concerned and filed on record in the Office of the Cameron County Recorder as a covenant upon the property upon which the principal use is located, requiring the owners, heirs, or assigns to maintain the required number of off-street parking spaces.

**Sec.20-8**     **District "C" - Business district – Fire Zone.**

(A)     Area, width and depth of lots, sanitation and temporary building provisions are the same as District "A".

(B)     Use regulations: In the "C" Business District no land shall be used and no building shall be erected or converted for any use other than:

(1)     Any use authorized in "B" District.

(2)     Bank, office, studio, restaurant, cafe, retail store, barber and beauty shops, curio shops, dry cleaners, coin operated laundries, bakery, hotels, nightclubs, drug stores, miniature golf, tennis courts, post offices and other governmental buildings, amusement centers, recreational centers, convenience storage facilities, theaters and drive-in theaters and gasoline service stations.(Ord. No. 77A, 7-1-61)

(3)     Special Exceptions: Public Service Facility. (Ord 96-05. 10-2-96)

(C)     Single family dwellings: If a single family dwelling is erected in "C" District such structure shall conform to all minimum requirements of a single family dwelling in "A" District.

(D)     Residence rear yard setback: If a residence is maintained in a structure that is also used for business purposes in "C" District, such structure shall conform to the minimum requirements of the "A" District for rear yard setback.

(E)     Height regulations: No building shall exceed six (6) standard stories in height, unless the setback from all street lines is one (1) foot for each two (2) feet of its height above such six (6) standard story limit. In no case shall the height of the building exceed the total of the street right-of-way width it faces, plus the depth of the front yard.

(F)     Area regulations:

(1)     Front yard: For off-street parking there shall be a front yard having a minimum depth of twenty-five (25) feet.

(a)     Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

(b)     Minimum front yard shall be increased one (1) foot for each two (2) feet in height if building exceeds six (6) standard stories.

(2)  Side yards: No side yard shall be required for a business use, except on a corner lot. In all cases where the side yard is adjacent to a street, the side yard shall be not less than ten (10) feet in depth. Any building exceeding three (3) standard stories shall have a side yard of four (4) feet for each additional story.

(3)  Rear yard: No structure of any classification shall be erected any closer than ten (10) feet of the rear lot line. The minimum rear yard shall be increased one (1) foot for each two (2) feet in height if the building exceeds six (6) standard stories.

(4)  Size of structure: The minimum size of structure shall be six hundred (600) square feet.

(5)  Parking regulations:

(a)  Parking regulations for all "B" District uses located in "C" District shall be the same as those outlined in "B" District.

(b)  Theaters shall provide off-street parking space in a ratio of one (1) space for each five (5) seats.

(c)  Nightclubs shall provide off-street parking space in a ratio of one (1) space for each one hundred and fifty (150) square feet of gross floor area. For nightclubs constructed or converted from other uses after August 1, 1994, off-street parking spaces shall be provided in a ratio of one (1) space for every One Hundred Square feet (100 sq. ft.) of gross floor area.

(d)  Restaurants and cafes shall provide off-street parking space in a ratio of one (1) space for each one hundred and fifty (150) square feet of gross floor area. For restaurants and cafes constructed or converted from other uses after August 1, 1994, off-street parking spaces shall be provided in a ratio of one (1) space per One Hundred square feet (100 sq. ft.) of gross floor area.

(e)  Retail stores and office buildings shall provide off-street parking space in a ratio of one (1) space for each two hundred fifty (250) square feet of gross floor area. (Ord. No. 77A, 7-1-81)

(f)  Retail, office and service buildings shall provide and maintain off-street facilities for the loading and unloading of merchandise and goods such that no part of the truck or trailer will be in a dedicated street, alley or easement during loading or unloading or parking.

(g)  The requirement for the provision of eight (8) stacking spaces for any use that will provide a drive through sales facet to its operation to insure that traffic will not back-up onto the public right-of-way.

(h)  Required parking for a non-residential use may be located off-site under the following circumstances:

(1)  No more than Fifty (50) Percent of the required parking for the use may be located off-site.

(2)  The off-site parking location must be either a contiguous property on the same side of the street as the property upon which the principal use to be served by the off-site parking is located, or a property directly across the street from the principal use, but no farther than Seventy-Six Feet (76') from the nearest property line of the principal use. Notwithstanding this provision, off-site parking locations shall not be permitted on the opposite side of Padre Boulevard from the location of the principal use to be served by the off-site parking.

01/00/00 12:00A  P.012

(3) All off-site parking lots shall be located on property zoned within the same or similar zoning district.

(4) A written agreement, prepared by the applicant and drawn to the satisfaction of the Town Attorney, shall be executed by all parties concerned and filed on record in the Office of the Cameron County Recorder as a covenant upon the property upon which the principal use is located, requiring the owners, heirs, or assigns to maintain the required number of off-street parking spaces.

(i) Off-street parking facilities for amusement parks and/or uses shall be determined by the Planning and Zoning Commission on an individual plan review basis.

(6)   Amusement centers:

(a)   No amusement center shall have any machine which projects photographic or film imagery.

(b)   No amusement center, as that term is herein defined, shall serve alcoholic beverages of any nature, nor shall alcoholic beverages be consumed upon the premises.

(c)   All amusement centers shall be required to locate their machines at least eighteen inches (18") apart and provide proper and adequate passageways, so that the public may pass behind the person using said machines without interfering with the person playing or utilizing said machine.

(d)   Any business that has more than three (3) machines which require the deposit of money to be activated for an individual's entertainment, is subject to their gross receipts being audited by the officials of the Town to determine whether or not fifty percent (50%) or more of their income is derived from said machines, then said business shall be declared an amusement center, as herein defined, and subject to all the rules and regulations of the Town. (Ord. No. 2E, 7-21-76)

## SEC. 20-8.1  District "C-1"  GENERAL BUSINESS DISTRICT – FIRE ZONE (added by Ord 96-02;5/1/96)

(A)   **Purpose and Intent:**

This district is composed of those areas of the Town whose principal use is and ought to be general business activities which serve community. This district has been located within the Town to permit the development of these business activities, to protect adjacent areas against the encroachment of incompatible uses, and to lessen congestion on the public streets. To these ends, certain uses which would function more effectively in other districts and would interfere with the operation of these business activities, and the purposes of this district, have been excluded.

(B)   **Use Regulations:**

(1)·   Permitted Uses:  The following uses shall be permitted as-of-right within the "C-1" District:

Hotels/Motels

Transportation/Communication
     freight forwarding service
     radio broadcasting station
     television broadcasting station
     travel arrangement services
     transportation ticket services
Retail Trade

(3)  All off-site parking lots shall be located on property zoned within the same or similar zoning district.

(4)  A written agreement, prepared by the applicant and drawn to the satisfaction of the Town Attorney, shall be executed by all parties concerned and filed on record in the Office of the Cameron County Recorder as a covenant upon the property upon which the principal use is located, requiring the owners, heirs, or assigns to maintain the required number of off-street parking spaces.

(i) Off-street parking facilities for amusement parks and/or uses shall be determined by the Planing and Zoning Commission on an individual plan review basis.

(6)  Amusement centers:

(a)  No amusement center shall have any machine which projects photographic or film imagery.

(b)  No amusement center, as that term is herein defined, shall serve alcoholic beverages of any nature, nor shall alcoholic beverages be consumed upon the premises.

(c)  All amusement centers shall be required to locate their machines at least eighteen inches (18") apart and provide proper and adequate passageways, so that the public may pass behind the person using said machines without interfering with the person playing or utilizing said machine.

(d)  Any business that has more than three (3) machines which require the deposit of money to be activated for an individual's entertainment, is subject to their gross receipts being audited by the officials of the Town to determine whether or not fifty percent (50%) or more of their income is derived from said machines, then said business shall be declared an amusement center, as herein defined, and subject to all the rules and regulations of the Town. (Ord. No. 2E, 7-21-76)

## SEC. 20-8.1  District "C-1"  GENERAL BUSINESS DISTRICT -- FIRE ZONE  (added by Ord 96-02;5/1/96)

(A)  Purpose and Intent:

This district is composed of those areas of the Town whose principal use is and ought to be general business activities which serve community.  This district has been located within the Town to permit the development of these business activities, to protect adjacent areas against the encroachment of incompatible uses, and to lessen congestion on the public streets.  To these ends, certain uses which would function more effectively in other districts and would interfere with the operation of these business activities, and the purposes of this district, have been excluded.

(B)  Use Regulations:

(1)  Permitted Uses:  The following uses shall be permitted as-of-right within the "C-1" District:

Hotels/Motels

Transportation/Communication
        freight forwarding service
        radio broadcasting station
        television broadcasting station
        travel arrangement services
        transportation ticket services
Retail Trade

antiques
apparel and accessories
arts and crafts
bicycles -- sales and rental
books
cameras and photographic supplies
candy, nut, and confectionery
china, glassware, and metalware
cigars and cigarettes
custom tailoring
department stores
direct selling organizations
draperies, curtains, and upholstery
dry good and general merchandise
electrical supplies
florists
floor coverings
fruit and vegetables
furniture
furs and furriers
gasoline service stations
gifts, novelties, and souvenirs
grocery and convenience food stores
hardware
heating and plumbing equipment
household appliances
ice cream and frozen deserts
jewelry
limited price variety stores
liquor store
mail order houses
meat, fish, and seafood
motor vehicle sales, including motorcycles
music supplies
newspapers and magazines
optical goods
paint, glass, and wallpaper
pharmacy/drug store
radios and televisions
restaurant, cafe, or delicatessen
second hand merchandise
specialty food shops/bakeries
sporting goods -- sales and rental
stationery
Finance, Insurance, and Real Estate Services
bank
commercial credit institutions
commodity contracts brokers and dealers services
credit unions
holding and investment services
insurance agents, brokers, and services
insurance carriers
pawn shop
real estate agents, brokers, and management services
real estate operators and lessors
real estate subdividing and developing services
savings and loan association

security brokers, dealers, and flotation services
security and commodity exchanges
security and commodity allied services
title abstracting services

Personal Services
apparel repair and alterations
artist's studio
beauty and barber shops
catering services
diaper services
dry cleaning pick-up station
laundry – coin operated, self-service
linen supply
fur repair and storage services
photographic services
rug cleaning and repair
shoe repair and shoe shining services
tattooing and body art

Business Services
adjustment and collection services
advertising services
business management consulting services
consumer and mercantile credit reporting services
detective and protective services
disinfecting and exterminating services
duplicating, mailing, and stenographic services
employment services
janitorial services
motion picture distribution services
news syndicate services
photofinishing services
printing and publishing services
research, development, and testing services
trading stamp services

Repair Services
automobile wash services
bicycle repair
electrical repair
household appliance repair
motor vehicle repair, excluding body work
reupholstery and furniture repair
television and radio repair
watch, clock, and jewelry repair

Professional Services
accounting, auditing, and bookkeeping services
chiropractor services
dental laboratory services
dental services
educational and scientific research services
engineering and architectural services
legal services
licensed therapeutic massage
medical clinic
medical laboratory
physician's services
urban planning services

Contract Construction Services

01/00/00  121:00A  P.015
CSMPDF - www.fesko.com

carpentering and wood flooring services
concrete, piling, excavation, foundation, and flat work
electrical services
general contractor services
masonry, stonework, tile setting, stucco, and plastering services
painting, paper hanging, and decorating services
plumbing, heating, and air conditioning services
roofing and sheet metal services

Governmental Services
governmental functions, facilities, and buildings
postal services

Educational Services
art and music school
barber and beauty school
business and stenographic school
correspondence school
dancing school
day care centers
driving school
nursery schools
primary and secondary education
university, college, junior college, and professional school education
vocational or trade school

Miscellaneous Services
business associations
churches, temples, mosques, and synagogues
civic, social, and fraternal organizations
labor unions/labor organizations
professional membership organizations
welfare and charitable services

Cultural, Entertainment, and Recreational
art galleries
boat ramp
botanical gardens and arboretums
dinner theater
historic and monument sites
libraries
museums
planetaria
public parks
theater -- stage play -- indoor
theater -- motion picture -- indoor

(2)    Special Exceptions: Within the "C-1" District, the following uses may be permitted as special exceptions upon review and approval by the Board of Adjustment.  Any property located within the "C-1" District may be approved for any of the following listed uses, provided the Board of Adjustment shall first make a positive finding that any proposed use or change in use shall have no negative impact upon surrounding properties or upon the character of the District, as required by Section 20-16.

Transportation/Communications
marine passenger terminals
marina
radio broadcasting tower
television transmitting tower

Retail Trade
building materials
fuel/fuel oil/bottled gas/liquefied petroleum

Town of South Padre Island Code of Ordinances                    2/3/00    113

lumberyard

marine craft sales

recreational vehicle and travel trailer sales (new and used), but not including mobile homes

plant nursery/lawn and garden supplies

taverns, bars, nightclubs, saloons, or dance hall, but not including any outdoor facilities

Personal Services

commercial laundry, dry cleaning plant, dyeing services

funeral and crematory services

Business Services

automobile and truck rental services

equipment rental and leasing

general warehousing and storage

household goods warehousing and storage

outdoor storage and long-term vehicle parking areas

Repair Services

motor vehicle body repair services

Professional Services

hospital

Cultural, Entertainment, and Recreational

amphitheater

auditorium

banquet hall

billiard hall

bowling center

exhibition hall

go-cart track

golf driving range

gymnasium and health club

miniature golf

reception hall

recreational center

skating rink

theater – stage play – outdoor

theater – motion picture – outdoor

Public Service Facility. (Ord 96-05. 10-2-96)

(3) Accessory Uses: Within the "C-1" District, any use that is clearly incidental and subordinate to the principal use of the property, is definitely an integral part of the services of such principal use, and is intended for the convenience of the customers of the principal use of the property may be permitted as an accessory use (unless otherwise listed as a special exception). Such accessory uses shall meet the following requirements:

(a) The sum of all accessory uses shall not constitute a total area larger than twenty (20) percent of the total building area of the principal use.

(b) No accessory use shall be constructed or used until the principal use is established on the same lot.

(c) No accessory use shall continue after the termination of the principal use upon the lot.

The City Manager, or his designee, shall determine if a proposed use qualifies as an accessory use under these regulations. In cases of doubt, or on specific questions raised, as to whether a proposed use qualifies as an accessory use under the requirements of this

01/00/00 12:00A  P.017

Ordinance, the matter may be appealed to the Board of Adjustment, in accordance with Section 20-16, and shall be decided by the Board as a question of fact.

(C)     Area Regulations:  The following regulations shall apply in all "C-1" Districts:

(1)     Minimum Site Area:  The minimum site area shall be five thousand (5,000) square feet.

(2)     Minimum Lot Width and Depth:  The minimum lot width shall be fifty (50) feet.  The minimum lot depth shall be one hundred (100) feet.

(3)     Maximum Lot Coverage:  The maximum lot coverage shall be as dictated by the other area and performance standards, such as yard setbacks, landscaping, and parking.

(4)     Minimum Structure Size:  The minimum size of a structure shall be six hundred (600) square feet.

(5)     Minimum Height:  No building or structure shall exceed six (6) standard stories in height, unless the setback from all street lines is one (1) foot for each two (2) feet of its height above such six (6) standard story limit.  In no case shall the height of any building or structure exceed the total of the street right-of-way width it faces, plus the depth of the front yard.

(6)     Yard and Setback Requirements:

(a)     Front Yard:  There shall be a front yard having a minimum depth of twenty-five (25) feet.

(1)     Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

(2)     The minimum front yard shall be increased one (1) foot for each two (2) feet in height if a building exceeds six (6) standard stories.

(b)     Side Yards:  A minimum side yard of five (5) feet shall be provided on each side of the structure, except under the following circumstances:

(1)     Where commercial buildings are constructed at the side property line with fire walls complying with the requirements of the Building Code for zero property line clearance, no sideyard will be required.

(2)     Where a side line of a lot in this district abuts the side line of a lot in a residential district (Districts "A," "B," or "E"), a side yard shall be provided the same as required in the residential district it abuts.

(3)     Where the side yard is adjacent to a street, the side yard shall be not less than ten (10) feet.

(4)     Any building exceeding three (3) standard stories shall have a sideyard of four (4) feet for each additional story.

(c)     Rear Yard:  A minimum rear yard of ten (10) feet shall be provided.  The minimum rear yard shall be increased one (1) foot for each two (2) feet in height if the building exceeds six (6) standard stories.

(7)     Parking Regulations:

Town of South Padre Island Code of Ordinances                    2/3/00      115

(a)   Parking regulations for all "B" District uses located in the "C-1" District shall be the same as those outlined in Section 20-7(D)(5)(a)-(n).

(b)   Theaters shall provide off-street parking space in a ratio of one (1) space for each five (5) seats.

(c)   Nightclubs, bars, taverns, and saloons shall provide off-street parking space in a ratio of one (1) space for each one hundred and fifty (150) square feet of gross floor area.  For nightclubs, bars, taverns, and saloons constructed or converted from other uses after August 1, 1994, off-street parking spaces shall be provided in a ratio of one (1) space for every one hundred (100) square feet of gross floor area.

(d)   Restaurants, cafes, and delicatessens shall provide off-street parking space in a ratio of one (1) space for each one hundred and fifty (150) square feet of gross floor area.  For restaurants, cafes, and delicatessens constructed or converted from other uses after August 1, 1994, off-street parking spaces shall be provided in a ratio of one (1) space for every one hundred (100) square feet of gross floor area.

(e)   Retail stores and office buildings shall provide off-street parking space in a ratio of one (1) space for each two hundred and fifty (250) square feet of gross floor area.

(f)   Retail, office, and service buildings shall provide and maintain off-street facilities for the loading and unloading of merchandise and goods such that no part of the truck or trailer will be in a dedicated street, alley, or easement during the loading, unloading, or parking of the vehicle.

(g)   For any use that will provide a drive-through sales facet to its operation shall provide eight (8) stacking spaces to insure that traffic will not back-up into the public right-of-way.

(h)   Required parking for non-residential uses may be located off-site under the following circumstances:

(1)   No more than fifty (50) percent of the required parking for the use may be located off-site.

(2)   The off-site parking location must be either a contiguous property on the same side of the street as the property upon which the principal use to be served by the off-site parking is located, or a property directly across the street from the principal use, but no farther than seventy-six (76) feet from the nearest property line of the principal use.  Notwithstanding this provision, off-site parking locations shall not be permitted on the opposite side of Padre Boulevard from the location of the principal use to be served by the off-site parking.

(3)   All of the off-site parking lots shall be located on property zoned within the same or similar zoning district.

(4)   A written agreement, prepared by the applicant and drawn to the satisfaction of the Town Attorney, shall be executed by all parties concerned and filed on record in the Office of the Cameron County Clerk as a covenant upon the property upon which the principal use is located, requiring the owners, heirs, or assigns to maintain the required number of off-street parking spaces.

(i)   Parking Spaces:  All parking spaces shall be paved with a permanent, all-weather surface of asphaltic cement or Portland concrete, shall have dimensions not less than nine (9) feet in width by eighteen (18) feet in depth, and shall be clearly striped.

(l)   Fractional Spaces:  When determination of the number of off-street parking spaces required by this Ordinance results in a requirement of a fractional space, the fraction of 1/2 or more shall be counted as one parking space.  A fraction of less than 1/2 may be disregarded.

(k)   Parking for Multiple Use Buildings:  The number of parking spaces required for land or buildings used for two or more purposes shall be the sum of the requirements for the various uses, computed in accordance with the requirements of this Ordinance.  Parking facilities for one use shall not be considered as providing the required parking facilities for any other use.

(l)   Use of Required Parking Spaces:  Required off-street parking facilities provided for the uses listed herein shall be solely for the parking of motor vehicles, in operating condition, of patrons, occupants, or employees of such uses, and shall not be used for the storage of other vehicles, boats, motor homes, campers, or other recreational vehicles or for the storage or display of merchandise, equipment or materials.  In no case shall any required parking space devoted to the principal use of a lot be leased, rented, or sold for the purpose of use by any other person, firm, company, corporation, or use.

(m)   Changes in Use:  When a change in use creates greater parking requirements than the amount being provided for the pre-existing use, an occupancy permit shall not be issued for the change in use until provision is made for the increased amount of required off-street parking.

(n)   Maintenance of Parking Facilities:  Any person owning and/or operating a parking lot shall keep it, and any adjoining sidewalks, free of dust, loose particles, trash, and debris.  All signs, markers, or any other method used to indicate the direction of traffic movement and the location of parking spaces shall be maintained in a neat and legible condition.  Likewise, any walls and landscaping, as well as the surfacing and curbing of the parking lot and sidewalks shall be maintained through out its use.

(o)   Drainage:  All off-street parking areas shall be drained so as to prevent drainage to abutting properties.  The manner of site drainage shall be subject to the review and approval of the Director of Public Works.

(8)   Required Screening Device:  Where off-street parking and/or loading areas within the "C-1" District are located adjacent to residentially-zoned property (i.e., Districts "A," "B," and/or "E"), or lies directly across the street from residentially-zoned property, there shall be located along all common property lines a screening device consisting of a continuous solid wooden fence, masonry wall, or landscaped earthen berm with a minimum height of six (6) feet, except that the height of such fence, wall, or earthen berm shall   not exceed thirty (30) inches within any front yard setback area adjacent to a public or private street, when placed perpendicular to that street.  In the instance of a masonry wall or wooden fence, the finished side of the wall   or fence shall be to the adjacent property.

(9)   Exterior Lighting:  The following standards are required of all exterior lighting:

(a)   Private streets, driveways, parking lots, walks, and service areas shall be kept properly and adequately lighted at all times so that the area will be safe for occupants and visitors.  All entrances and exits shall be lighted and all lighting shall be at the expense of the owner.

(b)   Lighting fixtures, whether mounted upon a building or independently upon a pole, light standard, or other structure, shall not exceed sixteen (16) feet in height.

(c)   All luminaires ( the complete lighting unit, consisting of the lighting source and all necessary mechanical, electrical, and decorative parts)  shall be a "cut-off type" luminaire (a

luminaire with elements such as shields, reflectors, or refractor panels which direct and cut-off the emitted light at a specific cut-off angle).  All luminaires shall have a cut-off angle of ninety (90) degrees or less.

(d)    The lighting from any luminaire shall be so shaded, shielded, or directed to prevent direct light from being cast upon any adjacent residential property, and to prevent glare or other objectionable problems to surrounding areas.

(e)    Neither the direct or reflected light from any luminaire shall fall upon any adjacent public street.

(f)    No exterior light shall have any blinking, flashing, or fluttering light or other illuminating device which has a changing light intensity or brightness of color.

(g)    Prior to any exterior lighting being installed or substantially modified, an exterior lighting plan shall be submitted to the City Manager, or his designee, to determine if the requirements of this Section have been met.

(10)    Outside Storage:  All outside storage of materials, equipment, the storage of fleet vehicles or the long-term storage vehicles for others shall be within an area so screened by a solid masonry wall or wood fence of sufficient height so that said materials and/or equipment are not visible at the grade of the nearest street and/or adjoining properties.



## Sec. 20-8.2  DISTRICT "C-2"  ENTERTAINMENT RELATED USES DISTRICT  (added by Ord 77N; 11/1/95)

(A)    Purpose and Intent:

The "C-2" Entertainment Related District is unique through its development as a center of similar entertainment and recreational uses within the Town of South Padre Island, and is an object of special and substantial public interest due to its richness and character, imparting a distinct aspect to an otherwise new city.  It is deemed essential to the public welfare that these qualities relating to the "C-2" Entertainment Related Uses District be preserved and protected from destructive changes in use, and the growth pressures evident within the area and throughout the community it serves, which threaten its existence as a unique, cohesive, and definable whole.

It is the intent of these regulations to preserve and enhance the best elements of the Entertainment District through the review of changes in land use to protect against the undesirable encroachment by incompatible uses on the district, while encouraging uses which will lead to its continuance, conservation, and improvement in a manner appropriate to the preservation of this unique area of the community.

(B)    Use Regulations:

(1)    Permitted Uses:  The following uses shall be permitted as-of-right within the "C-2" Entertainment Related Uses District:

Residential
    Hotel/Motel
Retail Trade
    Antiques
    Apparel and Accessories
    Arts and Crafts/Art Gallery
    Bait Shop
    Bicycle Sales and Rental
    Books, Stationery, Newspapers, and Magazines
    Cameras and Photographic Supplies

Candy, Nuts, and Confectionery
Delicatessen
Department Store, Mail Order, and Direct Selling Organizations
Florist
Gifts, Novelties, and Souvenirs
Hardware
Ice Cream and Frozen Deserts
Liquor -- Retail
Music Supplies
Restaurant, Fast-Food, With or Without Drive-Thru
Restaurant, Sit-Down, No Drive-Thru
Specialty Food Shops/Bakery
Sporting Goods -- Sales and Rental
Taverns, Bars, and Saloons
Tobacco Products
Variety and General Merchandise

Cultural, Entertainment, and Recreational
Amphitheater
Amusement Center
Aquarium
Aqua-Sports
Arcade
Auditorium
Banquet Hall
Bicycle -- Rental and Repair
Billiard Hall
Boat Ramp -- Public
Boat Ramp -- Private
Boat Rental
Bowling Center
Dinner Theater
Exhibition Hall
Health Club\Gymnasium
Historic and Monument Sites
Ice Skating Rink -- Indoor
Library
Marina
Museum
Public Parks
Piers -- Private and Public
Planetaria
Private Club
Reception Hall
Recreational Center
Roller Skating Rink
Theater -- Stage Play
Theater -- Motion Picture

Repair Services
Bicycle Repair
Boat Repair Services

Governmental Services
Postal Services
Governmental Functions, Facilities, and Buildings

Personal Services
Artist's Studio
Photographic Services
Beauty and Barber Shops

> Apparel Repair and Alterations
> Shoe Repair and Shoe Shining Services
> Tattooing and body art

Financial Services
> Bank
> Savings and Loan Association
> Commercial Credit Institutions
> Credit Unions
> Holding and Investment Services

General Offices for Business and Professional Services

(2) Special Exceptions: Within the "C-2" Entertainment Related Uses District, the following uses may be permitted as special exceptions upon review and approval by the Board of Adjustment. Any property located within the "C-2" Entertainment Related Uses District May be approved for any of the following listed uses, provided the Board of Adjustment shall first make a positive finding that any proposed use or change in use shall have no negative impact upon surrounding properties or upon the character of the District, as required by Section 20-16.

| | |
|---|---|
| Apartments | Miniature Golf |
| Bingo Parlor | Outdoor Entertainment Uses Not Otherwise Listed |
| Condominiums | Racetrack |
| Duplex | Single-Family Dwelling |
| Go-Cart Track | Townhouse |
| Heliport Pad | Public Service Facility. (Ord 96-05, 10-2-96) |

Any use which is permitted as a special exception within the "C-2" Entertainment Related Uses District and is an existing use shall not be deemed a non-conforming use in such district, but shall without further action be considered a conforming use. Any existing residential use shall be considered permitted as a special exception, without further action, as provided herein.

(3)     Accessory Uses: Within the "C-2" Entertainment Related Uses District, any use that is (a) clearly incidental and subordinate to the principal use of the property, (b) is definitely an integral part of the services of such principal use, and (c) is intended for the convenience of the customers of the principal use of the property may be permitted as an accessory use. Such accessory uses shall meet the following requirements:

(a)     The accessory use shall be located within the same structure as the principal use.

(b)     The accessory use shall maintain internal pedestrian traffic flow with the principal use and shall not be designed to function as a separate and independent business operation.

(c)     The sum of all accessory uses shall not constitute a total area larger than twenty (20) percent of the total building area of the principal use.

(d)     No accessory use shall be constructed or used until the principal use is established on the same lot.

(e)     No accessory use shall continue after the termination of the principal use upon the lot.

The City Manager, or his designee, shall determine if a proposed use qualifies as an accessory use under these regulations. In cases of doubt, or on specific questions raised, as to whether a proposed use qualifies as an accessory use under the requirements of this Ordinance, the matter may be appealed to the Board of Adjustment, in accordance with Section 20-16, and shall be decided by the Board as a question of fact.

(C) Area Regulations: The following regulations shall apply in all "C-2" Entertainment Related Uses Districts:

(1) Minimum Site Area: The minimum site area shall be two thousand (2,000) square feet.

(2) Minimum Lot Width: The minimum lot width shall be twenty (20) feet.

(3) Maximum Lot Coverage: The maximum lot coverage shall be as dictated by the other area and performance standards, such as yard setbacks, landscaping, and parking.

(4) Yard and Setback Requirements:

(a) Front Yard: There shall be a front yard having a minimum depth of fifteen (15) feet.

(i) Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

(ii) The minimum front yard shall be increased one (1) foot for each two (2) feet in height if a building exceeds six (6) standard stories.

(b) Side Yards: A minimum side yard of five (5) feet shall be provided on each side of the structure, except under the following circumstances:

(i) Where commercial buildings are constructed at the side property line with fire walls complying with the requirements of the Building Code for zero property line clearance, no sideyard will be required.
(ii) Where a side line of a lot in this district abuts the side line of a lot in a residential district (Districts "A," "B," or "E"), a side yard shall be provided the same as required in the residential district it abuts.
(iii) Where the side yard is adjacent to a street, the side yard shall be not less than ten (10) feet.
(iv) Any building exceeding three (3) standard stories shall have a sideyard of four (4) feet for each additional story.

(c) Rear Yard: A minimum rear yard of ten (10) feet shall be provided, except where a rear line of a lot in this district abuts lots zoned residential (Districts "A," "B," or "E"), then a rear yard of not less than twenty (20) feet shall be provided.

(5) Innovative Subdivision Designs: The Board of Aldermen, upon recommendation by the Planning and Zoning Commission, may approve innovative subdivision designs in which the minimum site area and minimum width requirements vary from those listed in Section (C)(1), above, in order to more closely achieve the spirit and intent of this District through a unified and comprehensive design approach.

(D) Parking Regulations: Parking regulations for all uses within the "C-2" Entertainment Related Uses District shall be the same those outlined in the "C" District, Section 20-8(F)(5), and the "D" District, Section 20-9(E)(3), as applicable, except as follows:

(1) If the property-owner of a property located within the "C-2" Entertainment Related Uses District voluntarily elects to participate in the construction of off-site publicly-owned parking, whose use will be made available to all patrons of the District, the property-owner's on-site parking requirement may be reduced on a 1:1 ratio. The amount of on-site parking reduced will be determined by dividing the amount of the property-owner's contribution by the cost per parking space to construct the public parking.

(E)     Signage: The rules and regulations governing the provision of signage for uses within the "C-2" Entertainment Related Uses District shall be as provided in Chapter 15 of the Town Code of Ordinances, as applicable, except as follows:

(1)     Free-Standing Ground-Mounted Signs: All permanent, free-standing, ground-mounted signs, including but not limited to pole signs and monument signs, otherwise permitted by Chapter 15, are hereby prohibited on all properties within the "C-2" Entertainment Related Uses District, with the exception of those lots within the district, bordering Padre Boulevard.

(2)     Projecting Signs: Each principal structure within the "C-2" Entertainment Related Uses District may provide one (1) projecting sign in addition to all other permitted signage, under the following conditions:

   (a)     Projecting signs shall be pedestrian oriented, and of a carved or hand-painted, artistic nature.
   (b)     The sign shall consist of simple, clear graphics and recognizable symbols or logos to communicate the nature of the business. Lettering shall not encompass more than twenty-five (25) percent of the sign face.
   (c)     The maximum size of each sign face shall not exceed four (4) square feet, including all projections or extensions.
   (d)     Projecting signs shall only be placed directly over the main entrance to the structure.
   (e)     Projecting signs shall clear the adjacent sidewalk grade by a minimum of eight (8) feet, and shall not extend vertically beyond the window sill of the second story, or 15 feet whichever is the lesser.
   (f)     Projecting signs shall project at a ninety (90) degree angle from the structure, shall be pinned away from the wall of the structure a minimum of six (6) inches, and shall project no further than four (4) feet, six (6) inches from the wall of the building.
   (g)     Angular projection from a corner of the structure is prohibited, unless the architectural style of the structure is such that the angle of the corner has been cut-off in order to provide the main entrance to the structure at that location.
   (h)     Every sign shall be designed as an integral architectural element of the building to which it principally relates. The mounting brackets of such signs shall be an integral part of the sign and complementary to the design of the sign. Visible angle iron or other frames supporting projecting signs, as well as chain supports are prohibited, except as an artistic element of the sign. No projecting sign shall be entirely supported by an unbraced parapet wall.
   (i)     Lighting shall be discreet and unobtrusive. No unshielded lights will be permitted. All lighting fixtures shall be placed such that they will not be struck or otherwise damaged by the projecting sign in the event of high wind.

(3)     A-Frame/Sandwich Signs: Restaurants, Cafes, and Nightclubs may provide one (1) portable a-frame or sandwich sign, not exceeding twelve (12) square feet in size, under the following conditions:

   (a)     The sign shall only be permitted as an "on-premises" sign, that is, located upon the same property as the principal use to which it directly relates, as opposed to an "off-premises" sign (See Section 15-2 of the Town Code of Ordinances, "Definitions").
   (b)     The sign shall not be placed in such a fashion as to block or otherwise interfere with traffic on a public street or sidewalk.
   (c)     The sign shall not be placed in such a fashion as to block or otherwise interfere with any parking space or vehicle access to the property.
   (d)     The sign shall not be placed so as to block or otherwise obstruct any fire exit or other form of safety ingress/egress.
   (e)     The sign shall be removed within the premises during non-business hours.

(4)     Wall Signs: Notwithstanding the requirements of Chapter 15 as they relate to the provision of wall signs:

(a)   Within the "C-2" Entertainment Related Uses District, a colored, neon tube, outline sign may be used as the permitted wall sign at a size not to exceed ten (10) percent of the building facade upon which the sign is placed.

(b)   Within the "C-2" Entertainment Related Uses District, in the instance of corner lots, an additional wall sign, conforming to the size requirements of Chapter 15 of the Town's Code of Ordinances, will be permitted on each street frontage of the building, providing that neither sign is visible at the same time from either direction.

(5)   Alternative Signage Plan:  For buildings with multiple occupancies, where utilization of the standard sign requirements may present difficulties, the property-owner may submit a comprehensive alternative signage plan for approval by the Planning and Zoning Commission.  The alternative sign plan may provide for a "directory" sign, or a larger number of wall signs as may be necessary to address the multiple occupancies, provided that the total square footage of sign area permissible for the structure is not exceeded.

(F)   Repealed per Ordinance 99-10 enacted June 17, 1999.   *(99.05 prohibited completely 4/2)*

(G)   Repealed per Ordinance 99-03 enacted Mar 3, 1999.

(H)   Repealed per Ordinance ~~99-3~~ *99-03* enacted Mar 3, 1999.

## SEC. 20-8.3 "C-3" LIMITED BUSINESS DISTRICT -- FIRE ZONE (added by Ord 96-02;5/1/96)

(A)   Purpose and Intent:

This district is composed of those areas of the Town whose principal use is and ought to be retail, service, and repair business activities which serve community.  This district has been located within the Town to permit the development of these business activities, to protect adjacent areas against the encroachment of incompatible uses, and to lessen congestion on the public streets.  To these ends, certain uses which would function more effectively in other districts and would interfere with the operation of these business activities, and the purposes of this district, have been excluded.

(B)   Use Regulations:

(1) Permitted Uses:  The following uses shall be permitted as-of-right within the "C-3" District:

Hotels/Motels

Transportation/Communication
    radio broadcasting station
    television broadcasting station
    travel arrangement services
    transportation ticket services
Retail Trade
    antiques
    apparel and accessories
    arts and crafts
    bicycles -- sales and rental
    books
    cameras and photographic supplies
    candy, nut, and confectionery
    china, glassware, and metalware
    cigars and cigarettes
    custom tailoring
    department stores
    direct selling organizations
    draperies, curtains, and upholstery

dry good and general merchandise
electrical supplies
floor coverings
florists
furniture
furs and furriers
gifts, novelties, and souvenirs
hardware
heating and plumbing equipment
household appliances
ice cream and frozen deserts
jewelry
limited price variety stores
liquor store
mail order houses
music supplies
newspapers and magazines
optical goods
paint, glass, and wallpaper
pharmacy/drug store
radios and televisions
specialty food shops/bakeries
sporting goods -- sales and rental
stationery
Finance, Insurance, and Real Estate Services
bank
commercial credit institutions
commodity contracts brokers and dealers services
credit unions
holding and investment services
insurance agents, brokers, and services
insurance carriers
real estate agents, brokers, and management services
real estate operators and lessors
real estate subdividing and developing services
savings and loan association
security brokers, dealers, and flotation services
security and commodity exchanges
security and commodity allied services
title abstracting services
Personal Services
apparel repair and alterations
artist's studio
beauty and barber shops
dry cleaning pick-up station
fur repair and storage services
laundry -- coin operated, self-service
photographic services
rug cleaning and repair
shoe repair and shoe shining services
tattooing and body art
Business Services
adjustment and collection services
advertising services
business management consulting services
consumer and mercantile credit reporting services
detective and protective services

CSMPDF - www.fxsite.com

       duplicating, mailing, and stenographic services
       employment services
       janitorial services
       motion picture distribution services
       news syndicate services
       photofinishing services
       printing and publishing services
       research, development, and testing services
       trading stamp services

Repair Services
       bicycle repair
       electrical repair
       reupholstery and furniture repair
       television and radio repair
       watch, clock, and jewelry repair

Professional Services
       accounting, auditing, and bookkeeping services
       dental services
       educational and scientific research services
       engineering and architectural services
       licensed therapeutic massage
       legal services
       physician's services
       urban planning services

Governmental Services
       governmental functions, facilities, and buildings
       postal services

Educational Services
       art and music school
       barber and beauty school
       business and stenographic school
       correspondence school
       dancing school
       driving school
       primary and secondary education
       university, college, junior college, and professional school education
       vocational or trade school

Miscellaneous Services
       business associations
       churches, temples, mosques, and synagogues

Cultural, Entertainment, and Recreational
       art galleries
       historic and monument sites
       libraries
       museums
       public parks

(2) Special Exceptions: Within the "C-3" District, the following uses may be permitted as special exceptions upon review and approval by the Board of Adjustment. Any property located within the "C-3" District may be approved for any of the following listed uses, provided the Board of Adjustment shall first make a positive finding that any proposed use or change in use shall have no negative impact upon surrounding properties or upon the character of the District, as required by Section 20-16.

Retail Trade
       fruit and vegetables
       grocery store, convenience food stores

        meat, fish, and seafood
        motor vehicle sales, including motorcycles
        plant nursery/lawn and garden supplies
        restaurant, cafe, or delicatessen
        second hand merchandise
        taverns, bars, nightclubs, saloons, not including any outdoor facilities

Personal Services
        catering services
        diaper services
        linen supply services

Business Services
        automobile and truck rental services
        automobile wash services
        disinfecting and exterminating services
        equipment rental and leasing
        household goods warehousing and storage
        outdoor storage and long-term vehicle parking areas

Professional Services
        dental laboratory services
        medical laboratory
        medical clinic

Contract Construction Services
        carpentering and wood flooring services
        concrete, piling, excavation, foundation and flat work services
        electrical services
        general contractor services
        masonry, stonework, tile setting, stucco, and plastering services
        painting, paper hanging, and decorating services
        plumbing, heating, and air conditioning services
        roofing and sheet metal services

Educational Services
        day care centers
        nursery schools

Miscellaneous Services
        civic, social, and fraternal organizations
        labor unions/labor organizations
        professional membership organizations
        welfare and charitable services

Cultural, Entertainment, and Recreational
        amphitheater
        auditorium
        banquet hall
        billiard hall
        exhibition hall
        gymnasium and health club
        planetaria
        reception hall
        recreational center

Public Service Facility. (Ord 98-05, 10-2-98)

(3)   Accessory Uses:   Within the "C-3" District, any use that is clearly incidental and subordinate to the principal use of the property, is definitely an integral part of the services of such principal use, and is intended for the convenience of the customers of the principal use of the property may be permitted as an accessory use (unless otherwise listed as a special exception). Such accessory uses shall meet the following requirements:

(a)    The sum of all accessory uses shall not constitute a total area larger than twenty (20) percent of the total building area of the principal use.

(b)    No accessory use shall be constructed or used until the principal use is established on the same lot.

(c)    No accessory use shall continue after the termination of the principal use upon the lot.

The City Manager, or his designee, shall determine if a proposed use qualifies as an accessory use under these regulations. In cases of doubt, or on specific questions raised, as to whether a proposed use qualifies as an accessory use under the requirements of this Ordinance, the matter may be appealed to the Board of Adjustment, in accordance with Section 20-16, and shall be decided by the Board as a question of fact.

(C)    Area Regulations: The following regulations shall apply in all "C-3" Districts:

(1)    Minimum Site Area: The minimum site area shall be five thousand (5,000) square feet.

(2)    Minimum Lot Width and Depth: The minimum lot width shall be fifty (50) feet. The minimum lot depth shall be one hundred (100) feet.

(3)    Maximum Lot Coverage: The maximum lot coverage shall be as dictated by the other area and performance standards, such as yard setbacks, landscaping, and parking.

(4)    Minimum Structure Size: The minimum size of a structure shall be six hundred (600) square feet.

(5)    Minimum Height: No building or structure shall exceed six (6) standard stories in height, unless the setback from all street lines is one (1) foot for each two (2) feet of its height above such six (6) standard story limit. In no case shall the height of any building or structure exceed the total of the street right-of-way width it faces, plus the depth of the front yard.

(6)    Yard and Setback Requirements:

(a)    Front Yard: There shall be a front yard having a minimum depth of twenty-five (25) feet.

(1)    Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

(2)    The minimum front yard shall be increased one (1) foot for each two (2) feet in height if a building exceeds six (6) standard stories.

(b)    Side Yards: A minimum side yard of five (5) feet shall be provided on each side of the structure, except under the following circumstances:

(1)    Where commercial buildings are constructed at the side property line with fire walls complying with the requirements of the Building Code for zero property line clearance, no sideyard will be required.

(2)    Where a side line of a lot in this district abuts the side line of a lot in a residential district (Districts "A," "B," or "E"), a side yard shall be provided the same as required in the residential district it abuts.

(3)    Where the side yard is adjacent to a street, the side yard shall be not less than ten (10) feet.

**Town of South Padre Island Code of Ordinances**                    2/3/00    127

(4)   Any building exceeding three (3) standard stories shall have a sideyard of four (4) feet for each additional story.

(c)   Rear Yard:  A minimum rear yard of ten (10) feet shall be provided.  The minimum rear yard shall be increased one (1) foot for each two (2) feet in height if the building exceeds six (6) standard stories.

(7)  Parking Regulations:  Parking regulations for all uses within the "C-3" Limited Business District – Fire Zone shall be the same as those outlined in the "C-1" General Business District – Fire Zone, Section 20-8.1(C)(7) as applicable.

(8)  Required Screening Device:  Requirements for the provision of required screening devices for all uses within the "C-3" Limited Business District – Fire Zone shall be the same as outlined in the "C-1" General Business District – Fire Zone, Section 20-8.1(C)(8).

(9)  Exterior Lighting:  Exterior lighting requirements for all uses within the "C-3" Limited Business District – Fire Zone shall be the same as those outlined in the "C-1" General Business District – Fire Zone, Section 20-8.1(C)(9) as applicable.

(10) Outside Storage:  Regulations pertaining to the provision of outside storage of materials and equipment for all uses within the "C-3" Limited Business District – Fire Zone shall be the same as those outlined in the "C-1" General Business District – Fire Zone, Section 20-8.1(C)(10).

Sec.20-9      District "D" - Resort area district.

(A)   Area, width and depth of lots, sanitation and temporary building provisions are the same as District "A".  Front yard, rear yard, height and size of structure requirements are the same as District "C".  Side yard requirements are the same as District "B".

(B)   Use regulations:  In a "D" District, no land shall be used and no building shall be used and no building shall be erected or converted for any other use than:

(1)   Any use permitted in "C" District (business).

(2)   Weekend cottages, yacht club, boat docks, marine repairs, trailer parks (travel trailers), indoor skating rinks, miniature golf, bowling alleys, retail bait stands, second-hand stores, beer taverns and dance halls.

(3)   Special Exceptions: Public Service Facility. (Ord 96-05. 10-2-96)

(C)   If a single family or multi-family dwelling is erected in "D" District, such structure shall conform to all minimum requirements of the "B" District.

(D)   If a residence is maintained in a structure that is also used for business or resort in "D" District, such structure shall conform to all minimum requirements of the "B" District.

(E)   Area regulations:

(1)   Side yards adjacent to a street shall be not less than ten (10) feet.

(2)   Rear yards:  Same as District "C" except decks or balconies may extend within ten (10) feet of the rear lot line as in District "B".

(3)   Parking regulations:

(a)   Parking regulations for all uses permitted in "D" District are the same as those outlined in "C" District regulations.

(b)   Dwelling units shall provide one and one-half (1 1/2) off-street parking spaces for each unit. For dwelling units erected after August 1, 1994, two (2) off-street parking spaces shall be provided for each unit.

(c)   Bowling alleys shall provide off-street parking space at a ratio of two (2) spaces for each alley.

(d)   Dance halls, commercial amusement establishments and skating rinks shall provide off-street parking space at a ratio of one (1) space for each one hundred fifty (150) square feet of gross floor area.

(4)   Travel Trailer parks:   A recreational vehicles building permit is required prior to construction.   The park area must encompass a minimum of two (2) acres, with density not to exceed fifteen (15) units per acre.

(a)   Private streets:   Private streets shall be provided and shall extend continuously from public street right-of-way.   Minimum pavement widths shall be eighteen (18) feet and streets shall have a base of at least six (6) inches of caliche and two (2) inches of asphalt.

(b)   Lots:   Lots must have sanitary sewer, water and electric power and must be 75 feet long and 35 feet wide or 2,625 square feet.  The front yard setback shall be 10 feet.

(c)   Parking:   Parking space must be a minimum of one off-street space per lot, each space shall have a permanent all-weather surface, and shall have dimensions of not less than 8'6" x 18'0", or 300 square feet.

(d)   Accessory uses:   All accessory uses shall be located a minimum of ten (10) feet from the lot line.

(e)   Lighting:   The private streets, parking lots, walks and service areas shall be kept properly and adequately lighted at all times so that the park area will be safe for occupants and visitors.   All entrances and exits shall be lighted and all lighting shall be at the expense of the park owner.

## 20-9.1   "D-1"  RESORT AREA DISTRICT

(A)   Purpose and Intent:

This district is composed of those areas of the Town whose principal use is and ought to be a combination of residential and business uses in a resort setting. This district has been located within the Town to permit the development of these residential and business activities, to protect adjacent areas against the encroachment of incompatible uses, and to lessen congestion on the public streets. To these ends, certain uses which would function more effectively in other districts and would interfere with the operation of these residential and business activities, and the purposes of this district, have been excluded.

(B)   Use Regulations:

(1)   Permitted Uses:  The following uses shall be permitted as-of-right within the "D-1" District:

   Apartments
   Condominiums

Hotels/Motels

Transportation/Communication
     radio broadcasting
     television broadcasting
     travel arrangement services
     transportation ticket services
Retail Trade
     antiques
     apparel and accessories
     arts and crafts
     bicycles -- sales and rental
     books
     cameras and photographic supplies
     candy, nut, and confectionery
     china, glassware, and metalware
     cigars and cigarettes
     convenience food stores
     custom tailoring
     florists
     fruit and vegetables
     furs and furriers
     gasoline service stations
     gifts, novelties, and souvenirs
     ice cream and frozen deserts
     jewelry
     liquor store
     meat, fish, and seafood
     music supplies
     newspapers and magazines
     pharmacy/drug store
     radios and televisions
     restaurant, cafe, or delicatessen
     specialty food shops/bakeries
     sporting goods -- sales and rental
     stationery
     taverns, bars, nightclubs, saloons, or dance hall
Finance, Insurance, and Real Estate Services
     bank
     commercial credit institutions
     commodity contracts brokers and dealers services
     credit unions
     holding and investment services
     insurance agents, brokers, and services
     insurance carriers
     real estate agents, brokers, and management services
     real estate operators and lessors
     real estate subdividing and developing services
     savings and loan association
     security brokers, dealers, and flotation services
     security and commodity exchanges
     security and commodity allied services
     title abstracting services
Personal Services
     apparel repair and alterations
     artist's studio
     beauty and barber shops

catering services
diaper services
dry cleaning pick-up station
laundry -- coin operated, self-service
linen supply
photographic services
shoe repair and shoe shining services

Business Services
adjustment and collection services
advertising services
business management consulting services
consumer and mercantile credit reporting services
detective and protective services
duplicating, mailing, and stenographic services
employment services
motion picture distribution services
news syndicate services
photofinishing services
printing and publishing services
research, development, and testing services

Repair Services
automobile wash services
bicycle repair
watch, clock, and jewelry repair

Professional Services
accounting, auditing, and bookkeeping services
chiropractor services
dental services
doctor's office
educational and scientific research services
engineering and architectural services
legal services
licensed therapeutic massage

Governmental Services
governmental functions, facilities, and buildings
postal services

Educational Services
art and music school
dancing school
day care centers
nursery schools

Miscellaneous Services
civic, social, and fraternal organizations
professional membership organizations

Cultural, Entertainment, and Recreational
auditorium
art galleries
banquet hall
billiard hall
bingo parlor
boat ramp
botanical gardens and arboretums
bowling center

Town of South Padre Island Code of Ordinances

2/24/00   131

CVisPDF - www.fesiso.com

dinner theater
exhibition hall
gymnasium and health club
historic and monument sites
libraries
miniature golf
museums
planetaria
public parks
reception hall
recreational center
skating rink
theater – stage play – indoor
theater – motion picture – indoor

(2)     Special Exceptions:  Within the "D-1" District, the following uses may be permitted as special exceptions upon review and approval by the Board of Adjustment.  Any property located within the "D-1" District may be approved for any of the following listed uses, provided the Board of Adjustment shall first make a positive finding that any proposed use or change in use shall have no negative impact upon surrounding properties or upon the character of the District, as required by Section 20-16.

Transportation/Communications
        heliport landing/take-off pads
Governmental Services
        public service facility
Business Services
        outdoor storage and long-term vehicle parking areas
Cultural, Entertainment, and Recreational
        go-cart track
        golf driving range
        theater – stage play – outdoor
        theater – motion picture – outdoor

(3)     Accessory Uses:  Within the "D-1" District, any use that is clearly incidental and subordinate to the principal use of the property, is definitely an integral part of the services of such principal use, and is intended for the convenience of the customers of the principal use of the property may be permitted as an accessory use (unless otherwise listed as a special exception).  Such accessory uses shall meet the following requirements:

        (a)     The sum of all accessory uses shall not constitute a total area larger than twenty (20) percent of the total building area of the principal use.

        (b)     No accessory use shall be constructed or used until the principal use is established on the same lot.

    (c)     No accessory use shall continue after the termination of the principal use upon the lot.

        The City Manager, or his designee, shall determine if a proposed use qualifies as an accessory use under these regulations.  In cases of doubt, or on specific questions raised, as to whether a proposed use qualifies as an accessory use under the requirements of this Ordinance, the matter may be appealed to the Board of Adjustment, in accordance with Section 20-16, and shall be decided by the Board as a question of fact.

(C)     Area Regulations:  The following regulations shall apply in all "D-1" Districts:

(1)     Minimum Lot Area:  The minimum lot area shall be five thousand (5,000) square feet.

(2)     Minimum Lot Width and Depth:  The minimum lot width shall be fifty (50) feet.  The minimum lot depth shall be one hundred (100) feet.

(3)     Maximum Lot Coverage:  The maximum lot coverage shall be as dictated by the other area and performance standards, such as yard setbacks, landscaping, and parking.

(4)     Minimum Structure Size:  The minimum size of a structure shall be six hundred (600) square feet.

(5)     Minimum Height:  No building or structure shall exceed six (6) standard stories in height, unless the setback from all street lines is one (1) foot for each two (2) feet of its height above such six (6) standard story limit.  In no case shall the height of any building or structure exceed the total of the street right-of-way width it faces, plus the depth of the front yard.

(6)     Yard and Setback Requirements:

          (a)     Front Yard:  There shall be a front yard having a minimum depth of twenty-five (25) feet.

                    (1)     Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

                    (2)     The minimum front yard shall be increased one (1) foot for each two (2) feet in height if a building exceeds six (6) standard stories.

          (b)     Side Yards:  A minimum side yard of five (5) feet shall be provided on each side of the structure, except under the following circumstances:

                    (1)     Where commercial buildings are constructed at the side property line with fire walls complying with the requirements of the Building Code for zero property line clearance, no sideyard will be required.

                    (2)     Where a side line of a lot in this district abuts the side line of a lot in a residential district (Districts "A," "B," or "E"), a side yard shall be provided the same as required in the residential district it abuts.

                    (3)     Where the side yard is adjacent to a street, the side yard shall be not less than ten (10) feet.

                    (4)     Any building exceeding three (3) standard stories shall have a sideyard of four (4) feet for each additional story.

          (c)     Rear Yard:  A minimum rear yard of ten (10) feet shall be provided.  The minimum rear yard shall be increased one (1) foot for each two (2) feet in height if the building exceeds six (6) standard stories.

(7)     Parking Regulations:

          (a)     Parking regulations for all "B" District uses located in the "D-1" District shall be the same as those outlined in Section 20-7(C)(5).
          (b)     Parking regulations for all "C" District uses located in the "D-1" District shall be the same as those outlined in Section 20-8.1(C)(7).
          (c)     Off-Site parking facility is allowed (i) for uses that do not have specific parking requirements or (ii) when they have met all specific parking requirements at the site and plan to provide additional off-site parking and said off-site parking plan shall be reviewed and recommended by Town staff and reviewed by the Planning and Zoning Commission on an

individual plan basis and said recommendations will be sent to the Board of Aldermen for final approval.

(8)　　Required Screening Device:  Where off-street parking and/or loading areas  within the "D-1" District are located adjacent to residentially-zoned property within Districts "A," "B," and/or "E," or lies directly across the street from such residentially-zoned property, there shall be located along all common propertylines a screening device consisting of a continuous solid wooden fence, masonry wall, or landscaped earthen berm with a minimum height of six (6) feet, except that the height of such fence, wall, or earthen berm shall not exceed thirty (30) inches within any front yard setback area adjacent to a public or private street, when placed perpendicular to that street.  In the instance of a masonry wall or wooden fence, the finished side of the wall or fence shall be to the adjacent property.

(9)　　Exterior Lighting:  The standards required for all exterior lighting in the "D-1" District shall be the same as those outlined in Section 20-8.1(C)(9).

(10)　　Outside Storage:  The standards required for all outside storage of materials, equipment, and the storage of fleet vehicles or the long-term storage vehicles for others shall be the same as those outlined in Section 20-8.1(C)(10).

## 20-9.2   "D-2"  TRANSITIONAL RESORT AREA DISTRICT

(A)　　Purpose and Intent:

This district is composed of those areas of the Town whose principal use is and ought to be a combination of residential and limited business uses in a resort setting.  This district has been located within the Town to permit the development of these residential and limited business activities, to protect adjacent areas against the encroachment of incompatible uses, and to lessen congestion on the public streets.  To these ends, certain uses which would function more effectively in other districts and would interfere with the operation of these residential and business activities, and the purposes of this district, have been excluded.

(B)　　Use Regulations:

(1)　　Permitted Uses:  The following uses shall be permitted as-of-right within the "D-2" District:

　　Apartments
　　Condominiums
　　Hotels/Motels

　　Accessory Uses – Accessory personal service business uses such as barber shops, beauty shops, aqua-sports rental, game rooms, beach chair and umbrella rental, and child care facilities, contained within a multiple-family structure, if such accessory businesses can be shown to be strictly for the convenience of the occupants of the building and clearly an integral part of the services of such principal use.  Restaurants, Bars, and Saloons shall not be considered as permitted under this classification, except as a special exception.

　　Governmental Services
　　　　governmental functions, facilities, and buildings
　　　　postal services
　　Cultural, Entertainment, and Recreational
　　　　art galleries
　　　　boat ramp
　　　　botanical gardens and arboretums
　　　　historic and monument sites
　　　　libraries
　　　　museums
　　　　planetaria

Town of South Padre Island Code of Ordinances　　　　　　　2/3/00　　　134

public parks

(2)      Special Exceptions:  Within the "D-2" District, the following uses may be permitted as special exceptions upon review and approval by the Board of Adjustment.  Any property located within the "D-2" District may be approved for any of the following listed uses, provided the Board of Adjustment shall first make a positive finding that any proposed use or change in use shall have no negative impact upon surrounding properties or upon the character of the District, as required by Section 20-16.

> Single-Family Dwellings
> Two-Family Dwellings
> Townhouses
>
> Retail Trade
> > restaurant, cafe, delicatessen
> > taverns, bars, nightclubs, saloons, or dance hall
> Governmental Services
> > public service facility
> Cultural, Entertainment, and Recreational
> > banquet hall
> > gymnasium and health club
> > reception hall
> > recreational center

Any use which is permitted as a special exception within the "D-2" District, and is an existing use, shall not be deemed a non-conforming use in such district, but shall, without further action, be considered a conforming use.  Any existing residential use shall be considered permitted as a special exception, without further action, as provided herein.

(3)      Accessory Uses:  Within the "D-2" District, any use that is clearly incidental and subordinate to the principal use of the property, is definitely an integral part of the services of such principal use, and is intended for the convenience of the customers of the principal use of the property may be permitted as an accessory use (unless otherwise listed as a special exception).  Such accessory uses shall meet the following requirements:

(a)      The sum of all accessory uses shall not constitute a total area larger than twenty (20) percent of the total building area of the principal use.

(b)      No accessory use shall be constructed or used until the principal use is established on the same lot.

(c)      No accessory use shall continue after the termination of the principal use upon the lot.

The City Manager, or his designee, shall determine if a proposed use qualifies as an accessory use under these regulations.  In cases of doubt, or on specific questions raised, as to whether a proposed use qualifies as an accessory use under the requirements of this Ordinance, the matter may be appealed to the Board of Adjustment, in accordance with Section 20-16, and shall be decided by the Board as a question of fact.

(C)      Area Regulations:  The following regulations shall apply in all "D-2" Districts:

(1)      Minimum Lot Area:  The minimum lot area shall be five thousand (5,000) square feet.

(2)      Minimum Lot Width and Depth:  The minimum lot width shall be fifty (50) feet.  The minimum lot depth shall be one hundred (100) feet.

(3)      Maximum Lot Coverage:  The maximum lot coverage shall be as dictated by the other area and performance standards, such as yard setbacks, landscaping, and parking.

(4)     Minimum Structure Size: The minimum size of a structure shall be six hundred (600) square feet.

(5)     Minimum Height:  No building or structure shall exceed six (6) standard stories in height, unless the setback from all street lines is one (1) foot for each two (2) feet of its height above such six (6) standard story limit. In no case shall the height of any building or structure exceed the total of the street right-of-way width it faces, plus the depth of the front yard.

(6)     Yard and Setback Requirements:

      (a)     Front Yard:  There shall be a front yard having a minimum depth of twenty-five (25) feet.

          (1)     Where lots have double frontage, running through from one street to another, the required front yard shall be provided on both streets.

          (2)     The minimum front yard shall be increased one (1) foot for each two (2) feet in height if a building exceeds six (6) standard stories.

      (b)     Side Yards:  A minimum side yard of five (5) feet shall be provided on each side of the structure, except under the following circumstances:

          (1)     Where buildings are constructed at the side property line with fire walls complying with the requirements of the Building Code for zero property line clearance, no sideyard will be required.

          (2)     Where a side line of a lot in this district abuts the side line of a lot in a residential district (Districts "A," "B," or "E"), a side yard shall be provided the same as required in the residential district it abuts.

          (3)     Where the side yard is adjacent to a street, the side yard shall be not less than ten (10) feet.

          (4)     Any building exceeding three (3) standard stories shall have a sideyard of four (4) feet for each additional story.

      (c)     Rear Yard:  A minimum rear yard of ten (10) feet shall be provided.  the minimum rear yard shall be increased one (1) foot for each two (2) feet in height if the building exceeds six (6) standard stories.

(7)     Parking Regulations:

      (a)     Parking regulations for all "B" District uses located in the "D-2" District shall be the same as those outlined in Section 20-7(C)(5).

      (b)     Parking regulations for all "C" District uses located in the "D-2" District shall be the same as those outlined in Section 20-8.1(C)(7).

(8)     Required Screening Device:  Where off-street parking and/or loading areas within the "D-2" District are located adjacent to residentially-zoned property within Districts "A," "B," and/or "E," or lies directly across the street from such residentially-zoned property, there shall be located along all common property lines a screening device consisting of a continuous solid wooden fence, masonry wall, or landscaped earthen berm with a minimum height of six (6) feet, except that the height of such fence, wall, or earthen berm shall not exceed thirty (30) inches within any front yard setback area adjacent to

a public or private street, when placed perpendicular to that street.   In the instance of a masonry wall or wooden fence, the finished side of the wall or fence shall be to the adjacent property.

(9)     Exterior Lighting:  The standards required for all exterior lighting within the "D-2" District shall be the same as those outlined in Section 20-8.1(C)(9).

(10)     Outside Storage:  The standards required for all outside storage of materials, equipment, and the storage of fleet vehicles or the long-term storage vehicles for others shall be the same as those outlined in Section 20-8.1(C)(10).

Sec. 20-10     **District "E" - Low Density Residential--Single-Family and Townhouse Dwelling District.**

(A)     Purpose--This district is composed of those areas of the Town whose principal use is and ought to be single-family dwellings and single-family attached townhouse dwellings.  This district is characterized by dwelling units with separate and distinct owners who own and reside within the dwelling units or rent the same for a period greater than thirty (30) days.  This district is intended to create and preserve areas of essentially single-family residential character, and promote a single-family residential neighborhood environment.

(B)     Use Regulations:

(1)     Dwellings, one family.

(2)     Townhouse.  Prior to any permit being granted for the building of a townhouse, the proposed builder/owner shall be required to file a map or plat in recordable form with the Building Inspector and the same will be transmitted by the Building Inspector with his recommendations to the Board of Aldermen for approval or disapproval.

(3)     Accessory buildings, including private garage and bona fide servants' quarters, not for rent.  When the accessory building is directly attached to the main building it shall be considered an integral part of the main building.  When the accessory building is attached to the main building by a breezeway, the breezeway may be considered a part of the accessory building.  The floor area of all accessory buildings on the lot shall not exceed fifty percent (50%) of the gross floor area of the principal structure.

(4)     Temporary buildings to be used for construction purposes only, and which shall be removed upon the completion or abandonment of the construction work.

(5)     Field offices for the sale of real estate for the specified development which shall be used for temporary offices only, to be removed after sales are closed, and to be used on the site only.  A building permit is required for the installation of a field office and shall be valid for a one (1) year period, renewable upon expiration if sales are still active.

(6)     Special Exceptions:  Public Service Facility. (Ord 96-05, 10-2-96)

(C)·     Height Regulations:     No building shall exceed forty-five (45) feet, when measured vertically from the center line of the street to the highest point of the building.  *(Ord 99-03, 3-3-99)*

(D)     Area Regulations:

(1)     Front yards:

(a)     There shall be a frontyard having a depth of twenty-five (25) feet.
(b)     Where lots have double frontage, running through from one street to another, the required front yard shall be provided upon both streets.

01/00/00  12:00am  P. 040

CSMPDF - www.fesba.com

Case 1:01-cv-00019  Document 24  Filed in TXSD on 08/21/2001  Page 56 of 63

(c) Corner lots shall provide the minimum frontyard setback along both streets, with the exception of corner lots on Laguna and Gulf Boulevards. The frontyard setback for both the Laguna and Gulf Boulevard frontages or corner lots shall be ten (10) feet.

(2) Side yards: There shall be a side yard on each of the lot having a clear width of not less than five (5) feet, including projections of the side of the building such as eaves, cornices, porches, stairways, carports, etc.

(3) Rear yards:

(a) There shall be a rearyard having a depth of not less than twenty (20) feet from the rear lot line.

(4) Area of lot:

(a) For a single-family dwellings the minimum area of a lot shall be 5,000 square feet, or as recorded in the County Courthouse as of November 7, 1979.
(b) For attached single-family townhouse dwellings, the minimum area of a lot shall be 2,500 square feet per dwelling unit.

(5) Width of lot:

(a) For a single-family dwelling, the minimum width of a lot shall be fifty (50) feet.
(b) For attached single-family townhouse dwellings, the minimum width of a lot shall be twenty-five (25) feet.

(6) Depth of lot: The minimum depth of a lot shall be one hundred (100) feet.

(7) Parking Regulations: Off-street parking spaces shall be provided on the lot to accommodate two (2) vehicles for each dwelling unit; however, no supporting member of any garage structure shall be located within the required front yard.

(8) Sanitation: There shall be no sewage disposal without water carriage. Chemical toilets may be erected on a temporary basis during construction only.

(9) Special Area Requirements: In no instance shall more than four (4) single-family attached townhouses be connected as a single unit.

(10) Driveways: All driveways shall be limited to a maximum of twenty (20) lineal feet in width. No driveway shall extend beyond the required five (5) foot sideyard setback on either side of the residence. For townhouse uses, an additional minimum open space area of two (2) feet on each townhouse lot shall be required between the driveways of each adjoining townhouse along the length of the common, interior property line for the length of the driveway.

## Sec. 20-11    Special area regulations.

(A) Front, side and rear yard fences, walls, shrubs, etc.

(1) On any lot on which a front yard is required by this Ordinance, no walls, fences, signboards or other structure shall be erected and no hedge, tree or shrub, or other growth or structure of any kind shall be maintained in such location within the required front yard so as to obstruct the view or sight lines of the building line setback, except the planting of ornamental palms or trees along the property line is permitted for highway beautification purposes, provided such planting will not constitute a traffic hazard or interfere with adjoining businesses.

01/00/00 12:00AM P. 041

(2)      Any fence, wall, hedge, shrubbery, etc. higher than a base line extending from a point thirty (30) inches above walk grade to a point six (6) feet above walk grade at the depth of the front yard required, is hereby declared to be an obstruction except the planting of ornamental trees along the property line as set out in Paragraph 1, except a fence or wall may be erected above the thirty (30) inches and up to the six (6) foot height, as long as said fence or wall does not obstruct the view or sight line and the same can be seen through at the level above thirty (30) inches (such as chain link fence).

(3)      On any lot on which a side or rear yard is required by this Chapter, no wall or fence shall be erected that exceeds seven (7) feet above grade. The facing and backing of solid or hollow masonry walls shall have the grouting "finished" in accordance with good construction practice. Surface improvements such as the application of stucco, surewall, or paint, etc. shall appear on both sides and top of the masonry wall.

(B)      Drilling prohibited within 1,000 feet of structure. It shall be unlawful for any person, corporation or other legal entity to conduct any type of drilling operations within the Town for the exploration and/or recovery of oil or gas or other minerals within one thousand (1,000) feet of any type or kind of building or structure that is at any time habitated or used by people.

(C)      Recreational Vehicles/Mobile Equipment

(1)      Recreational Vehicles - Definitions

(a)      Motor Homes - A qualifying vehicle is a self-propelled completely self-contained vehicle which contains some or all of the conveniences of a home including cooking, sleeping, and/or permanent sanitary facilities, and in which the driver's seat is accessible in a walking position from the living quarters, and designed for temporary recreation, camping, or travel use.

(b)      Travel Trailers, Camping Trailers, and Fifth Wheel Trailers - Vehicles designed as living quarters for temporary recreation, camping, or travel use, which do not have their own motor power, but are designed to be drawn by another vehicle.

(c)      Truck Camper - Any unit primarily designed as temporary living quarters for recreation, camping, or travel use, which is capable of being occupied and designed to be temporarily attached to the bed or frame of a truck.

(d)      Mobile or Manufactured Home - A dwelling unit fabricated in an off-site manufacturing facility for installation or assembly at the building site, bearing a seal certifying that it is built in compliance with the Federal Manufactured Housing Construction and Safety Standards Code, and so designed and constructed as to permit its transport on wheels, temporarily or permanently attached to its own chassis, from the place of its manufacture to the location of which it is intended to be occupied, connected to utilities, for year-round occupancy, as a permanent dwelling unit. A mobile or manufactured home shall not be considered a recreational vehicle.

(2)      Regulations for Recreational Vehicles within the Town of South Padre Island, Texas.

(a)      Recreational Vehicles are prohibited from being used as rental properties or as permanent living quarters.

(b)      Recreational Vehicles, whether occupied or unoccupied, shall not be parked for more than ten (10) hours or overnight along any street right-of-way.

(c)      Recreational Vehicles, whether occupied or unoccupied, shall not be parked on any unimproved lot or upon any improved lot where the permanent residence is unoccupied.

(d)      Recreational Vehicles, shall be kept in good repair and in working condition, with a current license plate, unless stored in a parking garage or other permitted parking area.

(e)  The storage of recreational vehicles upon non-commercial property is permitted, provided all of the following conditions are met:

    (i)  The subject property shall be improved residential property with a permanent dwelling unit, not an unimproved, vacant property.

    (ii)  The stored Recreational Vehicle shall not, at any time, be used as living quarters upon the subject property.

    (iii)  Such vehicles shall be limited to those owned by the occupant of the permanent dwelling.

    (iv)  Recreational Vehicles shall not be stored where such parking or storing constitutes a vehicular traffic hazard or a threat to public health or safety.

    (v)  The stored Recreational Vehicle shall be maintained with monthly cleanup of weeds, tall grass, trash.

    (vi)  The Recreational Vehicle shall not be stored within the frontyard and sideyard setbacks.

    (vii)  Overnight parking of a recreational vehicle, belonging to the resident of the permanent dwelling unit, upon the driveway of the permanent dwelling unit, in preparation for a trip or the return from a trip, for a period not to exceed seven (7) days, shall not be considered "storage," and shall be permitted.

(f)  Commercial storage facilities for Recreational Vehicles shall:

    (i)  Be surfaced with a permanent, all-weather surfacing.

    (ii)  Be maintained with a monthly cleanup of weeds, tall grass and trash.

    (iii)  Be enclosed with a minimum of six (6) feet tall solid wood fence or masonry wall.

    (iv)  The overnight parking of a recreational vehicle upon private property and within the designated off-street parking area of a hotel or motel, by a guest of that hotel or motel, for the duration of the guest's stay, shall not be considered "storage," and shall be permitted, provided that the recreational vehicle is simply parked, and is not occupied, or otherwise used for residential purposes.

(g)  Overnight visitor parking of a Recreational Vehicle on private property may be permitted under the following circumstances:

    (i)  The Recreational Vehicle must be parked upon an improved residential property.

    (ii)  The occupant of the permanent dwelling unit upon the property must be in residence at the time of the visit.

    (iii)  The visit shall be limited to a maximum duration of not more than seven (7) consecutive days.

    (iv)  The total number of visits to any individual property shall not exceed a maximum of six (6) visits per calendar year.

    (v)  A permit authorizing the visit has been issued by the Town of South Padre Island. The permit application shall be filed by the occupant of the permanent dwelling unit, and shall contain the specific duration of the stay and a copy of the vehicle registration reflecting the ownership of the subject Recreational Vehicle. The issued permit shall be placed in a window of the visiting Recreational Vehicle such that it is visible at all times from the adjacent street.

(3)  Mobile Equipment - Definition

    (a)  Livestock trailers, tractor trailers, dump trucks, trucks licensed for over one (1) ton, which are used for commercial or industrial purposes, and such other vehicles not defined as recreational vehicles.

(4)  Regulations for Mobile Equipment within the Town of South Padre Island.

    (a)  No one may reside in, or occupy overnight, any Mobile Equipment.

    (b)  No Mobile Equipment may be parked along any street right-of-way for more than ten (10) consecutive hours, or overnight.

(D)  Temporary Structures:  Notwithstanding the requirements of the Town Code of Ordinances which regulates structures and their use on a year-round basis, during the period of recognized events

and Town holidays, the City Manager, or his designee, may grant permits for temporary structures for the respective event or holiday to be located in any zoning district except the "A" Single family dwelling district, "E" Low Density Residential–Single-Family and Townhouse Dwelling District, and "B" Multiple family dwellings, apartments, motel, hotel, condominium, townhouse district.  To qualify for a permit, the proposed temporary structure must comply with the following requirements: (Ord 99-03.  3-3-99)

(1)     Temporary structure permits may be issued to the owner or tenant of the permanent business structure located upon the same property where the temporary structure is proposed.  No permits will be issued to second parties who will operate a business activity from the temporary structure independent of that conducted in the permanent structure.

(2)     Temporary structures may include: conventionally constructed structures, pre-fabricated structures, tents, pushcarts, booths, trailers, attractions, devices or other facility designed to allow for the direct conduct of business from within.

(3)     Temporary structures shall not be deemed to include motorized vehicles such as, automobiles, trucks, buses, or recreational vehicles.

(4)     In those instances where the temporary structure proposed involves a trailer specifically designed to allow the direct conduct of business from within, said trailer shall be secured and completely skirted in a fashion complimentary to the trailer itself.

(5)     Depending upon the nature of the business to be conducted from the temporary structure, all other relevant Town codes and ordinances shall be met; i.e., the Zoning Ordinance, the Sign Ordinance, Health Codes.

(6)     Since the Town Code of Ordinances requires the provision of sanitary sewer facilities wherever retail sales are conducted, the use of temporary structures for business purposes shall be limited to those periods of the day when the principal use of the permanent structure located upon the property is open for business.

(7)     Generally, all unattended temporary structures shall be secured against high wind and intrusion.  However, because the community can be subject to high winds and severe weather on a random basis, the Town reserves the right to suspend all temporary structure permits at any time, and require the immediate removal of all such temporary structures.

(8)     The permit application materials for a temporary structure shall include:

(a)     A statement of the proposed use of the temporary structure.
(b)     A statement of the time period during which the temporary structure will be located upon the site. (Maximum of Forty-five (45) days in a calendar year, starting January 1 - December 31)
(c)     The name, address, telephone number, fax number (if applicable), and State Sales Tax number of the applicant.
(d)     A site plan reflecting the location of the proposed temporary structure upon the property, its distance from the permanent structure, the areas of ingress and egress from the permanent structure, the gross square footage of the permanent structure, location of any vehicle access points to the property, and the location and number of any parking spaces upon the property.
(e)     Payment of a two hundred fifty dollar ($250.00) application fee for each thirty (30) day period or part thereof.

(9)     Temporary structures shall not be permitted in the following locations:

(a)     Block or otherwise obstruct a fire exit or other form of safety ingress/egress.
(b)     Upon vacant or undeveloped properties.

Town of South Padre Island Code of Ordinances                          2/3/00     141

(10)    Town Exemption: Notwithstanding the requirements of this Town Code of Ordinances relating to open display and the use of temporary structures, the Town of South Padre Island shall be exempt from all provisions herein, and is expressly permitted to authorize the use of public property and the public right-of-way for the purposes of outdoor display and temporary structures for the purpose of publicly sponsored events, as well as recognized events sponsored by other agencies authorized by the Town."

## Sec. 20-11.1   Outdoor displays--Regulations and Requirements. (Ord 99-10. 6-17.-99)

It shall be unlawful for any person to set up outdoor display facilities for merchandise upon any property within the Town of South Padre Island, unless the same owner, operator or concessionaire is also the owner, lessee, or tenant of a permanent structure located on the same property and in full compliance with the Zoning and Building Codes of the Town. Any person desiring to set up outdoor display facilities shall comply with the following:

(A)    No displays of merchandise on top or side of buildings or in any manner hanging on or from the building with the exception of windsocks and spinners;

(B)    No storage of merchandise or inventory in vehicle(s), trailers or outside of the building;

(C)    All outdoor display facilities or fixtures must be secured and/or anchored so that they will not become detached in winds up to 75 miles per hour and must be removed daily at the close of business and brought into the place of business or placed in a fenced-in area on the property that is secure and windproof;

(D)    All outdoor display(s) shall only be permitted during the hours the business is open and staffed of each day;

(E)    All outdoor display facilities, except for windsocks and spinners, must be located within an area not to exceed Five (5) feet from the front wall of the main structure to a maximum of Ten (10) feet wide;

(F)    Windsocks and spinners will be allowed to display outside up to a maximum of Fifteen (15) items and these must be attached to the front structure of the business;

(G)    No outdoor display may eliminate any existing parking, block sidewalks in any way, and may not cause patrons to park or encroach on the Town's right of way;

(H)    Tents, clothing bins, baskets, clothing, clothing racks, soft goods and tables will not be allowed in any outdoor display facilities;

(I)    Until September 7, 1999 there is no limit on the time period (days) of outdoor display(s) except for (D) above. After September 7, 1999 outdoor display(s) will only be allowed for festivals and special events and for three (3) weekends per calendar year which periods of time (dates) shall be designated by the City Manager, except Kite stores may continue to display pursuant to (F) above which has no limitation for time period except for (D) above.

## Sec.20-12   Certain non-conforming uses.

(A)    Uses existing prior to passage of ordinance deemed conforming or non-conforming. Any lawful use of property existing prior to zoning or re-zoning of said property that does not conform to the regulations of Chapter 20 of the Code of Ordinances shall be deemed a non-conforming use; except that any duplex or apartment use existing prior to November 9, 1979 shall be thereafter deemed a conforming use.

01/00/00  121:00A  P.045

(B) **Future non-conforming uses prohibited.** The lawful use of land existing prior to zoning or re-zoning of said property, although such does not conform to the provisions hereof, may be continued, but if such non-conforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance. If a building occupied by a non-conforming use is destroyed by fire or the elements, it may not be reconstructed or rebuilt except to conform with the provisions of this ordinance.

(C) **Reverter of non-conforming use to lower classification prohibited.** The lawful use of a building existing prior to zoning or re-zoning of said property may be continued, although such does not conform to the provisions hereof, and such use may be extended throughout the building, provided no structural alteration, except those required by law or ordinance is made therein. If no structural alterations are made, a non-conforming use of the building may be changed to another non-conforming use of the same or more restricted classification; provided, however, that in the event a non-conforming use of a building is once changed to a non-conforming use of a higher or more restricted classification, it shall not later revert to the former or less restricted classification.

(D) **Continuance of non-conforming use subject to regulations.** The right of any non-conforming use to continue shall be subject to such regulations as to maintenance of the premises and conditions of operation as may, in the judgment of the Board of Adjustments, be reasonably required for the protection of adjacent property.

(E) **Restoration of damaged building permitted.** Nothing in this order shall be taken to prevent restoration of a building destroyed to the extent of not more than fifty-one percent (51%) of its reasonable value by fire, explosion or other casualty or act of God or public enemy, nor the continued occupancy or use of such building, or part thereof, which existed at the time of such partial destruction.

(F) **Improvements and additions to existing non-conforming uses.** The Board of Adjustment may grant the right to improve or make additions to existing non-conforming uses, after a public hearing, and subject to the following limitations and requirements, to wit;

(1) Additions or improvements shall only be considered for the same non-conforming use.

(2) Any additions or improvements shall not increase the original non -conforming use (being the size of the structure(s) at the time it became a non-conforming use) by more than 100%.

(3) All property owners within 200 feet of any application to expand a non-conforming use shall be notified of the hearing before the Board of Adjustment at least 15 days prior to the date of the hearing.

(4) Before the 15th day before the date of the hearing, notice of the time and place of the hearing must be published in the Town's official newspaper.

(5) The Applicant hereunder shall be responsible for all costs incurred for the hearing and permit process along with a $100 fee.

(6) The Applicant must demonstrate to the Board of Adjustment that the proposed addition or improvements will have no or minimal negative impact upon surrounding properties or upon the character of the neighborhood or the application will be denied."

## Sec.20-13    Setback area – Special regulations and uses.

(A) **Setbacks–Area Not To Be Used.** No vertical structures or manufacture of any kind, temporary or permanent, or any types of goods, wares or merchandise of any kind, or other property of any kind, will be placed within the setback requirements required by this code, except for fences, signs, trash pads, walks, and retaining walls and the sideyard setback may have placed in it swimming pool equipment, trash pads, walks, shower pads and air conditioning equipment not to exceed first floor level. The setback area shall be that portion of the property between a public right-of-way or lot line and the permissible building line for that piece of property. [Ord 98-03; Jan 1998]

(B) **Determining Setback Requirements.** When determining the setback requirements for this Chapter, the setback lines for a structure will vary for different portions of that structure as it increases in height, thereby allowing stairstepping in determining the setback requirements. Each time a building reaches a height that requires an additional setback, only that portion of

the building at that height must meet the additional setback, and the lower portions must only comply with the setback as applied to it.

(C) First Floor Parking. For purposes of determining setback lines only, if a structure utilizes its entire first floor as a parking structure (no storerooms, washrooms, telephone rooms or other habitable enclosures located thereon), the same shall not be counted as a floor height for setback requirements.

(D) Beach Lots—Rear Yard. All buildings located East of Gulf Blvd. are not required to maintain a rear yard regardless of any provision in this Chapter to the contrary and may build the rear of their structure to the building line as established by the Attorney General of the State of Texas.

## Sec. 20-14     Uses affecting parking areas.

(A) Parking areas—diminishing by commercial display, etc. prohibited. No person, party or entity may display any wares or merchandise or make any other use of the parking area located upon their property, if said display or use will cause the number of parking spaces to be less than those currently required. In no event may any person make use of the parking area which would effectively cause said property to have less than the minimum legally required parking spaces for the particular property use as is currently required by other ordinances and codes of the Town. (Ord. No. 92, 9-2-81)

(B) No conversion of use unless parking requirements met. No person, party or entity shall convert or change the use of property without also meeting the current required parking requirements for that particular use. (Ord. No. 92, 9-2-81)

(C) No expansion unless parking requirements met. No person, party or entity may expand, convert or add to any existing use of property without the same meeting the current requirements of parking spaces for the property. (Ord. No. 92, 9-2-81)

## Sec. 20-15     Certificate of occupancy and compliance.

(A) Building permit required for change in use. No building erected or structurally altered shall be used, occupied or changed in use until a building permit shall have been issued by the Building Inspector stating that the building or proposed use of a building or premises complies with the building laws and the provisions of this ordinance.

(B) Certificate of occupancy and compliance required. Certificates of occupancy and compliance shall be applied for coincident with the application for building permit and shall be issued within ten (10) days after the erection and structural alterations of such buildings shall have been completed in conformity with the provisions of this ordinance. A record of all certificates shall be kept on file in the office of the Town and copies shall be furnished on request to any person having a proprietary or tenancy interest in the building affected.

(C) Excavation prohibited without permit. No permit for excavation for any building shall be issued before application has been made for a certificate of occupancy and compliance.

(D) Architect or engineer to be legally registered. Before a permit shall issue for a building of three (3) stories or more in height or 5,000 square feet in area, except one and two-family dwellings, the designer of such building shall be an architect or engineer legally registered under the laws of this State and he shall affix his official seal to the drawings and specifications for the building.

## Sec. 20-16     Board of adjustment; Appeals.

There may be a Board of Adjustment appointed by the Board of Aldermen pursuant to Chapter 211 of the Local Government Code, said Board of Adjustment to be governed by, and acting pursuant to, said Law. Said Board of Adjustment may, pursuant to said Law, make special exceptions to the terms of this Ordinance in harmony with its general purposes and intent and in accordance with general or specific rules herein contained. The Board of Adjustment may, pursuant to said Law and bound by the provisions thereof, entertain and decide appeals by any person aggrieved or by any officer, department, board, or bureau of the Town affected by any decision of the administrative officer.

**Sec.20-17        Penalty for violation to apply to owner, architect, builder, etc.**

The owner or owners of any building or premises or part thereof, where anything in violation of this ordinance shall be placed, or shall exist, and/or any architect, builder, contractor, agent, person and corporation, employed in connection therewith and who may have assisted in the commission of any such violation, shall be guilty of a separate offense.

**Sec.20-18        Changes and amendments.**

(A)        Board of Aldermen may change district boundaries.  The Board of Aldermen may from time to time amend, supplement or change by order the boundaries of the Districts or the regulations herein established.

(B)        Submission of changes to Planning and Zoning Commission.   Before taking action on any proposed amendment, supplement or change, the Board of Aldermen shall submit same to the Planning and Zoning Commission for its recommendation and report in the event there is a Planning and Zoning Commission, and if there is no Planning and Zoning Commission then the Board of Aldermen may amend this ordinance as provided by law.

(C)        Public hearing required.   A public hearing shall be held by the Board of Aldermen before adopting any proposed amendment, supplement or change.  Notice of such hearing shall be published at least once fifteen (15) days prior to the hearing in the newspaper, stating the time and place of such hearing.

**Sec.20-19        Variances.**

No variance of the provisions of this Chapter may be granted by any official of the Town, and may be only granted by the Board of Adjustment, and if there be no Board of Adjustment, by the Board of Aldermen. (Ord. No.  2A,  8-7-74)

**Sec.20-20        Designation of Public Parks, Beaches, etc.**

Not withstanding any provision to the contrary contained within this Zoning Ordinance, the Board of Aldermen may designate public parks, beach areas, rest areas and other public facilities within any zone in the Town.